THIESEN *v.* DEARBORN CITY COUNCIL.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PARTIES.

Whether or not an unincorporated association of city employees was a proper party in employees' mandamus proceeding to compel city council to include a sum of money in municipal appropriation bill for fiscal year as city's contribution to annuity reserve fund under city ordinance for employees' retirement system is not determined where there were a sufficient number of proper plaintiffs without it (Dearborn Ordinance No. 210).

2. MUNICIPAL CORPORATIONS—HOME-RULE CITIES—ORDINANCES—CHARTERS.

A home-rule city cannot pass ordinances that are contrary to the charter of the city.

3. SAME—HOME-RULE CITIES—ORDINANCES—CHARTERS—POWER TO MAKE APPROPRIATIONS.

Ordinance of home-rule city, initiated and adopted by popular vote, whereby power to determine amount of city's contribution to annuity reserve fund of municipal employees' retirement system was purportedly given to an administrative board of trustees *held,* directory and not mandatory, since municipal charter vested city council with full power and authority to exercise all legislative powers conferred upon the city by the Constitution and general laws of the State, including the power to make appropriations and to determine the amounts to be raised for municipal purposes by taxation (Dearborn Ordinance No. 210).

4. SAME—HOME-RULE CITY EMPLOYEES' RETIREMENT SYSTEM—CITY'S CONTRIBUTION TO ANNUITY RESERVE FUND—APPROPRIATION—BREACH OF CONTRACT.

The failure of a home-rule city to appropriate amount determined by board of trustees of municipal employees' retirement system as city's contribution to annuity reserve fund in order to maintain actuarial sufficiency of such fund *held,* not a breach of contract with contributing employee mem-

bers, where the city has not defaulted on payments due the employees under the retirement system ordinance (Dearborn Ordinance No. 210).

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE—BREACH OF CONTRACT—KEEPING EMPLOYEES' CONTRIBUTIONS TO MUNICIPAL RETIREMENT SYSTEM.

Whether or not a breach of contract would be established if city repealed municipal employees' retirement system ordinance and then kept amounts paid in by the employees is not discussed where such a condition is not to be anticipated (Dearborn Ordinance No. 210).

6. COSTS—PUBLIC QUESTION—MANDAMUS—CITY COUNCIL—CITY'S CONTRIBUTION TO ANNUITY RESERVE FUND.

No costs are allowed in appeal in mandamus proceeding to compel city council to make an appropriation for city's contribution to maintain actuarial sufficiency of annuity reserve fund of municipal employees' retirement system, a public question being involved (Dearborn Ordinance No. 210).

Appeal from Wayne; Miller (Guy A.), J. Submitted January 13, 1948. (Calendar No. 43,781.) Decided April 5, 1948.

Petition by Leo W. Thiesen and others against Ray F. Parker and others as members of the council of the City of Dearborn for writ of mandamus compelling the inclusion of a sum in the annual budget of the city. Writ granted. Defendants appeal. Reversed.

*John J. Fish,* for plaintiffs.

*Dale H. Fillmore,* Corporation Counsel, *Joel K. Underwood,* Deputy Corporation Counsel, and *Earl C. Smith,* Assistant Corporation Counsel, for defendants.

BUTZEL, J. The individual plaintiffs are employees of the city of Dearborn, Michigan, and members of the retirement system created by ordinance No. 210 of the city of Dearborn, entitled:

"An ordinance to provide a retirement system, for employees of the city of Dearborn in the general classified civil service."

Another plaintiff is the Municipal Employees Association of the city of Dearborn, a voluntary unincorporated association of employees of the city, the majority of which are members of the retirement system created by ordinance No. 210. The right of this association to bring suit is questioned, but irrespective of whether it had such right or not there are sufficient number of proper plaintiffs without it.

Plaintiffs filed a petition for a writ of mandamus in the circuit court for the county of Wayne against the council of the city of Dearborn and its members to compel the city council to include the sum of $140,135 in the appropriation bill for the fiscal year beginning July 1, 1947, as the city's contribution to the annuity reserve fund under the provisions of ordinance 210. The ordinance was adopted by a vote of the electors of the city of Dearborn at a special election on November 3, 1942. Questions in regard to this same ordinance were ruled on in *Mayor of City of Dearborn* v. *Dearborn Retirement Board of Trustees,* 315 Mich. 18, and *Hubbard* v. *Board of Trustees of Dearborn Retirement System,* 319 Mich. 395.

The ordinance in general provides for the creation of a retirement system under which city employees who are members must contribute 5 per cent. of their compensation to an annuity savings fund. The ordinance further provides:

"ARTICLE 3.

"SECTION 1. The general administration and the responsibility for the proper operation of the retirement system and for making effective the provisions of this ordinance are hereby vested in the board of trustees of the retirement system.   *   *   *

"SEC. 14.   The board shall designate an actuary who shall be the technical advisor of the board in matters regarding the operation of the funds created by the provisions of this ordinance and who shall perform such other duties as are required in connection therewith.

"SEC. 15.   Immediately after the establishment of the retirement system, the actuary shall make such investigation of the mortality, service and compensation experience of the members as he shall recommend and the board shall authorize, and on the basis of such investigation he shall recommend for adoption by the board such tables and such rates as are required for the proper operation of the retirement system.   The board shall adopt tables and certify rates, and as soon as practicable thereafter the actuary shall make a valuation based on such tables and rates, of the assets and liabilities of the funds created by this ordinance.   *   *   *

"SEC. 17.   The board shall adopt for the retirement system such mortality, service and other tables as shall be deemed necessary, for the proper administration of this ordinance.   On the basis of such tables, the actuary shall make annually an actuarial valuation of the assets and liabilities of the funds of the retirement system.   *   *   *

"ARTICLE 7.   *   *   *

"SEC. 2. (a)   The annuity reserve fund shall be the fund in which shall be accumulated the reserves for the payment of all annuities and other benefits payable from the contributions made by the city. *   *   *

"(b)   Upon the basis of such mortality tables, regular interest and other tables as the board shall adopt, upon recommendation of the actuary, the actuary shall annually make an actuarial valuation of the assets and liabilities of the retirement system as of the close of the fiscal year ending June 30th. Upon the basis of such valuation, the actuary shall

annually compute the amount of the city's contribution to the annuity reserve fund, which paid annually during the future natural lifetime of the members and beneficiaries of the retirement system would be insufficient (*sic*) to provide payment of the annuities and other benefits to which members and beneficiaries may be entitled or are entitled to receive under the provisions of this ordinance. *The board shall report to the council, on or before the first day of March, the amount of the city's contribution so determined and the council shall appropriate and the city shall pay such amount of contribution into the annuity reserve fund during the ensuing fiscal year.*" (Italics ours.)

The ordinance further provides that if a person ceases to be a member of the retirement fund for any reason other than his becoming a beneficiary or because of his death, he shall be paid all or part of his contributions without interest or additions upon demand on forms provided by the board. Other provisions of the ordinance do not affect the question herein involved.

The board of trustees certified to the city council the amount of $140,135 as the amount the city should contribute to the annuity reserve fund for the fiscal year beginning July 1, 1947. The amount so certified was included by the council in its annual budget adopted April 8, 1947. This item in the budget was vetoed by the mayor of the city on April 21, 1947, and the council refused to override the mayor's veto. Plaintiffs seek to compel the council to do so by this action.

Plaintiffs contend that the council had a legal duty to override the mayor's veto and reinstate the certified amount in the budget because of the provisions of ordinance No. 210 above quoted. They contend that the provisions of the ordinance with reference

to the inclusion of the amount certified by the board of trustees in the annual budget are mandatory in character, and that the council has no discretion in the matter. As members of the retirement system, they contend that they have a direct personal and financial interest in the maintenance of the solvency of the retirement system and that defendants' failure to appropriate funds to it has jeopardized its solvency. The petition prays that the defendants be compelled to include the certified sum in the appropriation bill for the fiscal year beginning July 1, 1947.

The city of Dearborn is a home-rule city. It cannot pass ordinances that are contrary to the charter of the city. The charter makes due provision for the adoption of the budget each year and for the raising of money for municipal purposes by taxation. It provides for a city council and vests in it full power and authority to exercise all legislative powers conferred upon the city by the Constitution and general laws of the State, including the power to make appropriations and to determine the amounts to be raised by taxation for municipal purposes.

Ordinance No. 210 purports to give to the board of trustees of the retirement system the power to determine the amount that the city shall contribute to the retirement fund set up by the ordinance. However, it does not set up any fixed standards to guide the board in making a determination, other than that the board shall adopt "such mortality, service and other tables as shall be deemed necessary for the proper administration of this ordinance," and that the amount of the city's contribution shall be computed upon the basis of an actuarial valuation of the assets and liabilities of the retirement system under such tables. It thus passes to the board the power to determine which tables shall

be adopted, and, of course, the amount of the city's contribution depends on which tables are selected. If the board of trustees has this power, then the making of appropriations and, indirectly, the power to impose taxes has been partly delegated to an administrative board which is not responsible to or subject to the control of the people of the municipality. This would be contrary to the fundamental law as embodied in the home-rule act. The recommendation of the board of trustees is very valuable and ordinarily it would be followed. However, it is directory and not mandatory.

It is charged that the mayor, for political reasons, in a year in which he was running for re-election, vetoed the amount recommended by the board of trustees so as to lower the tax rate of the city. By the same token, if such were the case, he and the council were responsive to the will of the people as expressed at the polls at the next election. The mayor claimed that there was sufficient money in the retirement fund. It was further shown that litigation was pending in this Court by which the amount to be paid into the retirement fund was questioned. See *Hubbard* v. *Board of Trustees of Dearborn Retirement System, supra,* in which the mayor partly prevailed. It resulted in a savings of a not inconsiderable amount if spread over a period of 21 years.

The trial judge stated in the opinion in the instant case that ordinance No. 210 was in conflict with the discretionary power vested by the charter in the common council, and that under the ordinance the power to determine the amount of money to be raised by taxation was diverted from the council and mayor, where the charter vests it, to the board of trustees. He further stated:

"The ordinance itself is in conflict with these discretionary provisions of the charter. Under it the power to take money by taxation is diverted from the council and the mayor to another source. The Dearborn council is elected by the people year by year. Every year they must go back to the voters and account to the voters for their trusteeship in financial matters. This $140,000 under this contention and in this regard is not appropriated by the council. The power to appropriate it is taken by the ordinance away from the council and is reposed in the judgment and discretion of the trustees of the retirement fund and of their hired actuary. These trustees are not elected by the people, nor is the actuary.

"Can an ordinance of the city of Dearborn have the effect of amending or repealing express provisions of the charter? The answer, of course, is, 'No,' as to ordinances adopted by the council in the ordinary way. This ordinance was adopted under the initiative and under the city charter such an ordinance can be amended only by the initiative. It is binding mandatorily upon the members of the council. I am of the opinion that the power of the initiative is not unlimited. There are two ways in which it can be exercised. It can be exercised by way of adopting amendments to the city charter. Such amendments do, of course, have the effect of changing the city charter. Or, it can be exercised by way of the adoption of ordinances as this ordinance was adopted.

"I think common sense dictates that under these circumstances an initiated ordinance cannot be so broad as to change the intent and meaning of the city charter. It is adopted under the city charter and not as an indirect amendment of it. Given the effect contended for by petitioners it has the effect of destroying the discretionary power of the money-appropriating body, the council. It also has the effect by necessary implication of destroying the

right of the mayor to veto individual items in the city budget. The position of petitioners therefore on this point is not sound.''

The trial court, however, held that there was a contract between the employees and the city, under which the employees are bound to contribute 5 per cent. of their earnings and the city is bound to contribute the amount determined by the board of trustees. We are not in accord with this conclusion. The city has in no sense defaulted on payments of any amounts due to any employees. There has been no breach of any contract, nor does the council and mayor think there will be if the appropriation is not made for the year. Were the city to repeal the ordinance and endeavor to keep the amounts paid in by employees, the question of breach of contract might arise. We do not anticipate such a condition, and therefore, need not discuss it. The rights of municipal employees in pension funds is fully discussed in *Brown* v. *City of Highland Park,* 320 Mich. 108.

We believe the circuit judge erred in issuing a writ of mandamus and the order is reversed and set aside, but without costs, a public question being involved.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.