## HALSTEAD v CITY OF FLINT

Docket No. 62506. Submitted February 1, 1983, at Lansing.—Decided July 11, 1983. Leave to appeal denied, 418 Mich 915.

　　Donald Halstead and other pension fund recipients under the Flint Employees Retirement System who are not eligible for certain pension benefit increases brought an action in Genesee Circuit Court for declaratory and injunctive relief against the City of Flint and the Board of Trustees of the City of Flint Employees Retirement System. Plaintiffs alleged that § 35-16.3 of the Flint City Code, as passed by the Flint City Council on July 13, 1980, was violative of several constitutional provisions and sought an order enjoining its implementation. Section 35-16.3 provides that, in order to raise the pension level of certain employees above the poverty level, the level of the service pensions of the designated classes of persons would be raised. Plaintiffs alleged that such adjustments constituted an unconstitutional impairment of contract in that the new benefit liabilities were to be financed out of current service funding reserves, were violative of equal protection guarantees in that such increased benefits were payable only to service pension retirants with at least 15 years of service and were not available to designated beneficiaries, those with less than 15 years of service or persons on a disability retirement. Ollie B. Bivins, Jr., J., held that the ordinance impaired the contractual rights between the plaintiffs and defendants, was violative of constitu-

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d New Topic Service, Pension Reform Act § 73.

　　60 Am Jur 2d, Pensions and Retirement Funds § 55.

　　Disciplinary suspension of public employee as affecting computation of length of service for retirement or pension purposes. 6 ALR2d 506.

　　Services included in computing period of service for purpose of teachers' seniority, salary, or retirement benefits. 2 ALR2d 1033.

[2] 60 am Jur 2d, Pensions and Retirement Funds §§ 47-50.

[3] 60 Am Jur 2d, Pensions and Retirement Funds §§ 65-67.

[4, 5] 16A Am Jur 2d, Constitutional Law § 750.

　　60 Am Jur 2d, Pensions and Retirement Funds § 39.

[6] 60 Am Jur 2d, Pensions and Retirement Funds § 64.

　　Vested right of pensioner to pension. 52 ALR2d 437.

tional equal protection guarantees and was beyond the statutory authority of the city to enact and issued an order restraining defendants from making any disbursements pursuant to § 35-16.3. Defendants appeal. *Held:*

1. Since the new pension benefits were to be financed out of current excess service funding reserves and will in no way impair the contractual obligation to pay present benefits, the ordinance does not violate the constitutional prohibition against impairment of contract nor the constitutional prohibition against using service year funding to finance unfunded accrued liabilities.

2. The classification system used in the ordinance is an unconstitutional denial of equal protection of the law only if the classification system is not rationally related to a legitimate governmental interest. Plaintiffs failed to establish that the classification system, whereby the type of recipient, length of service and type of retirement are considered in determining eligibility for the increased benefits, is not reasonably related to a legitimate government interest.

3. The increased pensions, serving the public purpose of raising the pension of eligible persons above the poverty level, serves a legitimate government interest and is, accordingly, not a mere gratuity but is rather a proper adjustment for prior service.

Reversed.

1. CONSTITUTIONAL LAW — PUBLIC RETIREMENT SYSTEMS — ACCRUED FINANCIAL BENEFITS — CONTRACTS.

Accrued financial benefits of a public retirement system pension plan are, by constitutional mandate, a contractual obligation which cannot be diminished or impaired; "accrued financial benefits" as used in the Michigan Constitution provision relating to public pensions and retirement systems means the right to receive certain pension payments upon retirement based upon service performed (Const 1963, art 9, § 24).

2. CONSTITUTIONAL LAW — PUBLIC RETIREMENT SYSTEMS — ACCRUED FINANCIAL BENEFITS — CONTRACTS — IMPAIRMENT OF CONTRACTS.

A change in a public retirement system pension plan which does not diminish or impair the accrued financial benefits of such public pension plan does not constitute an impairment of contract; accordingly, such a change is not constitutionally prohibited on the basis that it impairs a contractual right (Const 1963, art 9, § 24).

3. Constitutional Law — Public Retirement Systems — Unfunded Public Pension Liabilities — Public Pension Fund Reserves.

The financing of the liability for improved pension benefits in a public retirement system pension plan from excess current service funding reserves does not violate the constitutional mandate that financial benefits arising on account of service rendered in each fiscal year shall be funded during that year (Const 1963, art 9, § 24).

4. Constitutional Law — Public Retirement Systems — Equal Protection — Burden of Proof.

The classification system used in a public retirement system pension plan will be sustained against a constitutional challenge that it denies equal protection of the law if the classification itself is rationally related to a legitimate governmental interest; one challenging such a classification system on equal protection grounds has the burden of showing that the classification system is without reasonable justification (US Const, Am XIV; Const 1963, art 1, § 2).

5. Constitutional Law — Public Retirement Systems — Pension Benefits — Equal Protection.

A public retirement system pension plan which, for benefit eligibility purposes, classifies pension recipients on the basis of whether the recipient is a retirant or a designated beneficiary on the basis of whether the recipient has more or less than a fixed period of service and on the basis of whether the retirement was a service or a disability retirement is not violative of the constitutional requirement of equal protection, there being a reasonable relationship between the classification scheme and a legitimate governmental purpose (US Const, Am XIV; Const 1963, art 1, § 2).

6. Municipal Corporations — Public Retirement Systems — Pension Benefits — Public Purpose.

An increase in pension benefits paid by a city under its public retirement system is not a gratuity which is outside the authority of the city to grant where the increase in pension benefits is to raise pension benefits above the poverty level, since such an increase furthers a public purpose.

*Dean, Dean, Segar, Hart & Shulman, P.C.* (by *Max Dean* and *Mary Simon*), for plaintiffs.

*James Walen,* City Attorney, and *Rickey L. Farrell,* Chief Assistant City Attorney, for defendant.

Before: T. M. BURNS, P.J., and ALLEN and CYNAR, JJ.

CYNAR, J. Defendants appeal as of right from a judgment restraining enforcement of ordinance § 35-16.3 of the Flint City Code.

On July 13, 1980, the Flint City Council adopted ordinance § 35-16.3. The ordinance, which affects the Flint Employees Retirement System, provides:

"The city shall, in the year 1980, and at least once during every five (5) calendar years thereafter, cause to be made a review of the annual service pension being paid by the retirement system to retirants who completed fifteen (15) or more years of service with the city prior to retirement. If, as a result of said review a determination is made that a significant number of such retirants are receiving annual service pensions below the level of low income budget for a retired couple published by the U. S. Department of Labor, the board may adopt such formula as it deems appropriate for the improvement of annual service pensions payable to such retirants following a determination by the actuary that the improvement proposed is actuarially sound and capable of being funded from revenue available in the retirement system. Any formula adopted by the board shall recognize the effective date of the retirement, the age of the retirant at the time of retirement, and the years and months of service upon retirement. The amount of such improvement computed in accordance with such formula shall not, when added to the original service pension payable to any retirant, result in an annual pension which exceeds the level of the low income budget for a retired couple published by the U. S. Department of Labor. The adjusted annual service pension shall be payable thereafter in equal monthly installments throughout the life of the retirant."

On September 19, 1980, plaintiffs filed their complaint, claiming to be pension fund recipients omitted from the increase in benefits provided for in § 35-16.3. Plaintiffs alleged that the ordinance violated the Equal Protection Clauses of the federal and state constitutions. Plaintiffs further alleged that the ordinance was an unconstitutional impairment of contracts and grounded on no statutory or constitutional authority. After a hearing, the court filed its opinion, concluding that the ordinance was violative of the Equal Protection Clauses and violative of the second paragraph of Const 1963, art 9, § 24.

The deposition of actuary Sandra Rodwan was taken on July 15, 1981. She was familiar with the Flint retirement system and the ordinance § 35-16.3. She understood the ordinance to provide defendants with a mechanism to grant periodic increases in retirement allowances to retirants receiving less than the low income budget for a married couple as established by the United States Department of Labor. Rodwan described the four funds existing under the retirement system: reserve for employer contributions, reserve for employee contributions, reserve for retired benefit payments and reserve for undistributed investment income. Retirement benefits are paid from the reserve for retired benefit payments. This reserve is partially funded at the time an employee retires by the transfer of his contributions from the reserve for employee contributions. The difference between the total present value of the funds necessary to provide for an employee's retirement and the employee's own contributions is transferred to the reserve for retired benefit payments from the reserve for employer contributions. Because of high interest rates, the prema-

ture death of many plan recipients and a number of other factors, the reserve for retired benefit payments accumulated a surplus of approximately $3,800,000 as of December, 1979. The pension adjustments contemplated in ordinance § 35-16.3 will come from the surplus in the reserve for retired benefit payments. Because the liability generated by the proposed adjustment is only $1,300,000, the adjustment can be made without additional employer contributions and without jeopardizing the financial integrity of the Flint retirement system. The adjustment provided for in the ordinance will have no adverse impact on the benefits of currently active employees or currently retired employees. If additional funds are necessary to fund the proposed adjustment, the funds will be supplied by employer contributions.

Rodwan interpreted the plan as an attempt to aid financially needy pension plan beneficiaries. In determining whether a particular beneficiary is needy, the ordinance focuses only on the amount of pension benefits received. Thus, a millionnarie with a small pension could qualify for an adjustment under the ordinance. Because the ordinance only provides adjustments for retirants with at least 15 years of service to the city, truly needy retirants with less than 15 years of services receive no adjustment under the ordinance.

Flint's Director of Labor Relations, Carol Mitchell, testified at the hearing. She was involved in the development of ordinance § 35-16.3. She worked with the mayor and an actuary to develop a formula for improving the pension system. Funds were not available to improve the pensions of every recipient under the system. The ordinance was enacted to aid those pension recipients receiving pensions below the established poverty level.

Beneficiaries receiving retirement benefits under the system were excluded because pensions involve payments for services rendered. The requirement that retirants have more than 15 years of service to receive an adjustment was based on an assumption that those persons with less than 15 years of service were the recipients of a pension from service with another employer.

## I

Const 1963, art 1, § 10 prohibits passage of a law impairing the obligation of contracts. See, also, US Const, art I, § 10.

Const 1963, art 9, § 24 provides:

"The accrued financial benefits of each pension plan and retirement system of the state and political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.

"Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities."

The first paragraph of Const 1963, art 9, § 24 provides that accrued financial benefits of the state's or a political subdivision's pension plan are a contractual obligation which cannot be diminished or impaired. "Accrued financial benefits" have been defined as the right to receive certain pension payments upon retirement based on service performed. *Kosa v State Treasurer,* 408 Mich 356, 370-371; 292 NW2d 452 (1980). The intention of the framers of Const 1963, art 9, § 24 was to obviate the harsh rule that pensions granted by public authorities were not contractual obligations but were gratuitous allowances revocable at will

by the public authority. *Advisory Opinion re Constitutionality of 1972 PA 258,* 389 Mich 659, 662-663; 209 NW2d 200 (1973). Where there is no diminishment or impairment of accrued financial benefits, there is no impairment of contract. See *Kosa, supra,* p 371. Because there is no evidence that ordinance § 35-16.3 diminishes or impairs the full payment of plaintiffs' accrued financial benefits, the ordinance does not violate the constitutional proscription against impairment of contracts.

The more difficult question under this issue is whether the ordinance violates the constitutional prohibition contained in the second paragraph of Const 1963, art 9, § 24 against using current service funding to finance unfunded accrued liabilities. According to the Convention Comment, § 24 attempts to rectify policies that had permitted sizeable deficiencies to mount in the state's retirement systems.

The trial court concluded that ordinance § 35-16.3 violated the second paragraph of Const 1963, art 9, § 24. We disagree. Defendants have not burdened the Flint retirement system with an unfunded liability by enacting ordinance § 35-16.3. The ordinance does not violate the second paragraph of Const 1963, art 9, § 24 by financing an unfunded liability with current service funding reserves. The money to pay for the pension improvement created by the ordinance comes from a surplus of money that exists in the reserve for retired benefit payments. If a retiree dies prior to exhausting all the money set aside in the reserve for that retiree, the excess money stays in the fund. At the time the ordinance was enacted, there was approximately $3,800,000 in excess money in the reserve, derived from the early deaths of some

retirees and from wise investment. Defendants' actuary determined that the ordinance will cost approximately $1,300,000 which is to be financed totally within the $3,800,000 surplus that currently exists in the reserve. This means that the pension improvement will use up only approximately 1/3 of the excess money in the reserve for retired benefit payments.

## II

The United States and Michigan Constitutions provide that no person shall be denied equal protection of the law. US Const, Am XIV; Const 1963, art 1, § 2.

Both parties agree that the minimal-scrutiny, reasonable-relationship test is appropriate. Under such equal protection analysis, the legislative classification must be sustained if the classification itself is rationally related to a legitimate governmental interest. See *Shavers v Attorney General,* 402 Mich 554, 613; 267 NW2d 72 (1978). The burden is on the party challenging the classification to show that it is without reasonable justification. *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 668; 232 NW2d 636 (1975). The trial court appears to have employed the correct standard of review in its opinion.

The articulated purpose of ordinance § 35-16.3 is to aid truly needy pension recipients. The legitimacy of defendants' objective is not greatly disputed.

The dispute in this case focuses on the reasonableness of the classifications drawn in furtherance of the claimed legitimate governmental interest of aiding truly needy pension recipients. Plaintiffs complain because the ordinance excludes cer-

tain classifications from the opportunity to receive the increased benefits. Plaintiffs point out that:

(a) Employee members who have elected, or members who will elect, pension options providing for a lesser pension benefit during the retirants' lifetime and for a continuation of such reduced pension payment to a designated beneficiary (usually a spouse) and those beneficiaries are excluded from the pension benefit increases under the provisions of the ordinance.

(b) Employee members who with less than 15 years of service have become or may become retirants, whether or not based on disability, would receive no increase in benefits under the provisions of the ordinance.

(c) Employee members who with more than 15 years of service have become retirants because of disability would receive no increase in benefits under the provisions of the amending ordinance.

Under the retirement system, an employee making certain elections permits his beneficiary to become a pension recipient after his death. Ordinance § 35-16.3 excludes such pension recipients from the proposed pension supplement. The asserted justification for the exclusion is that pensions involve payments for services rendered by the employee. We were troubled by this exclusion. We conclude, however, that there is a reasonable relationship between denying pension supplements to beneficiaries receiving money under the retirement system and the purported legitimate government purpose. We similarly find that the remaining classifications are reasonably related to identifying and aiding the retirement system's truly needy individuals.

It must be stressed that the reserve has a limited amount of money. Defendants' witness, Carol

Mitchell, testified that retirees with less than 15 years of service were excluded because many, if not all, such persons became employed by defendant city after having completed careers for which they were eligible for pension benefits with another employer. Retirees receiving a disability pension were excluded because they, in addition to their disability pensions, were in almost all cases entitled to receive workers' disability compensation payments from defendant city.

## III

Finally, the parties dispute whether defendants had the legal authority to use pension funds in the manner contemplated by ordinance § 35-16.3. This issue was arguably raised in ¶ 11 of plaintiffs' complaint.

Defendants contend that the ordinance is permissible in the absence of plaintiffs' citation to contrary legal authority. Plaintiffs assert that the ordinance constitutes a gratuity outside defendants' authority to conduct its affairs for a public purpose. See, generally, *Bowler v Nagel,* 228 Mich 434; 200 NW 258 (1924). We disagree with the claim that the ordinance under scrutiny is not furthering a public purpose. By adopting an ordinance ensuring that its employees will have a pension at least equivalent to the poverty level as established by the United States Department of Labor, defendants have adopted a mechanism that can be characterized as additional compensation for valuable services rendered as opposed to a gratuity.

### Conclusion

We conclude that the circuit court erred by determining that ordinance § 35-16.3 resulted in

an unconstitutional impairment of the obligation of a contract and that the ordinance was a violation of the constitutional right to equal protection of the laws. Finding error, we reverse the circuit court's decision.