SHELBY TOWNSHIP POLICE AND FIRE RETIREMENT
BOARD v SHELBY TOWNSHIP

Docket No. 86109. Argued March 6, 1991 (Calendar No. 1). Decided
August 27, 1991.

The Shelby Township Police and Fire Retirement Board brought
an action in the Macomb Circuit Court against the Charter
Township of Shelby. They sought a writ of mandamus directing
the township board to appropriate and pay to the Police and
Fire Pension fund the difference between the amount the board
certified and the amount the township actually paid to the
pension fund after the board's actuaries determined that the
pension fund was underfunded. The court, Raymond Cashen, J.,
granted summary disposition for the defendant, finding that
the township was not automatically obligated to contribute
amounts certified by the board, and ruled that the township
had more than satisfied its minimum funding obligation. It
noted, however, that if additional resources were required to
maintain adequate liquidity, the township would be required to
provide the resources. The Court of Appeals, SULLIVAN, P.J.,
and MURPHY and M. WARSHAWSKY, JJ., affirmed in an opinion
per curiam (Docket No. 100866). The plaintiff appeals.

In an opinion by Justice MALLETT, joined by Chief Justice
CAVANAGH and Justices LEVIN, BRICKLEY, and RILEY, the Su-
preme Court held:

Const 1963, art 9, § 24 expressly requires the township to
maintain the actuarial integrity of the pension system to
include unfunded accrued liabilities. The authority delegated
by MCL 38.552; MSA 5.3375(2) to the retirement board does not
unconstitutionally abrogate the taxation, budgetary, and legis-
lative responsibilities of the township. In this case, the town-
ship's appropriation was inadequate, requiring remand to the
trial court for a determination consistent with the maintenance
by the township of the actuarial integrity of the pension
retirement system.

1. Const 1963, art 9, § 24 provides that the accrued financial

REFERENCES

Am Jur 2d, Pensions and Retirement Funds §§ 1608, 1613.
See the Index to Annotations under Pension and Retirement.

benefits of public employee pension systems are contractual obligations not to be diminished or impaired. The financial benefits that arise for services rendered in each fiscal year are to be funded during that fiscal year and are not to be used for financing unfunded accrued liabilities. Art 9, § 24 ensures the proper maintenance and the actuarial integrity of pension systems and rejects funding methods which do not account for unfunded accrued liabilities. In this case, the underfunding of the pension system resulted in a borrowing scheme which placed the board in a position of paying unfunded accrued liabilities with appropriations from current service cost contributions and rendered the money collected sufficient only to meet current service costs needs of the system. Art 9, § 24 expressly mandates townships and municipalities to fund all public employee pension systems to a level which includes unfunded accrued liabilities. Permitting townships to fund only pensions payable in a given year to current retirees and beneficiaries would unjustly alleviate the township of its obligation to fully fund the pension system.

2. 1937 PA 345, as amended by MCL 38.559(2); MSA 5.3375(9)(2), provides for the establishment, maintenance, and administration of a system of pensions and retirement to be managed and operated by a board of trustees authorized to appropriate sufficient funds to maintain actuarially determined reserves. MCL 38.552(4); MSA 5.3375(2)(4), mandates that the retirement board hire an actuary to certify an amount to cover current service costs as well as unfunded accrued liabilities. The express provisions of MCL 38.552(4); MSA 5.3375(2)(4), read in conjunction with MCL 38.559(2); MSA 5.3375(9)(2), clearly establish the authority necessary for the board to make an actuarial determination of the funds needed to maintain the retirement system. The Legislature has the power to set a maximum tax rate within which an authority plans its budget and apportions shares to participating municipalities. 1937 PA 345 does not violate the constitutional prohibition against surrender of the power of taxation.

3. By using the word "shall" in 1937 PA 345, the Legislature necessarily intended a township to be obligated to appropriate funds for pensions earned by active members for services already performed and to be performed in the current year. In enacting 1937 PA 345, the Legislature exercised its plenary authority over municipalities for the purpose of providing adequate funding for retirement systems, ensuring that pension systems be maintained. Once Shelby Township adopted the statutory pension system, it was subject to the legislative controls associated with the proper funding of that system. The

legislative delegation of authority to an agency or unit of government to establish levels of funding necessary for successful operation is not an unlawful interference with the township's power or a restriction on the township's ability to control the appropriation of its funds.

4. Mandamus is an extraordinary remedy and only appropriate where there is a clear legal duty bearing upon the defendant and a clear legal right by the plaintiff to discharge that duty. In this case, the certification of the board is deemed an authoritative recommendation. The township is compelled by MCL 38.559(2); MSA 5.3375(9)(2) to maintain the actuarial integrity of the pension system. Maintaining a level of actuarial integrity will require contribution of funds adequate to cover pensions earned by active members for services already performed and services to be performed in the current year and actual pensions paid to retirees. However, because it does not appear that the township had a clear legal duty to accept without question the actuarial method employed by the board, mandamus must be denied. Thus, remand to the trial court is required for a determination of the amount the township must contribute to the board. On remand, the township may exercise its right to question only the actuarial methods used by the retirement board actuary.

Justices BOYLE and GRIFFIN concurred in the result only.

Reversed and remanded.

175 Mich App 163; 437 NW2d 352 (1989) reversed.

CONSTITUTIONAL LAW — TOWNSHIPS — PENSIONS — ACTUARIAL INTEGRITY.

Townships are expressly required to maintain the actuarial integrity of pension systems to include unfunded accrued liabilities (Const 1963, art 9, § 24; MCL 38.552[2], [4], 38.559[2]; MSA 5.3375[2][2], [4], 5.3375[9][2]).

*Lewis R. Thumm (Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C., by Theodore Sachs and Eileen Nowikowski, of counsel) for the plaintiff.*

*John A. Dolan for the defendants.*

Amici Curiae:

*Bauckham, Sparks, Rolfe & Thomsen, P.C. (by*

*John H. Bauckham* and *Thomas M. Canny),* for
Michigan Townships Association.

*Ronald Zajac* for Michigan Association of Public
Employee Retirement Systems.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Theodore Sachs, Ronald R. Helveston,* and *Eileen Nowikowski),* for Michigan State Fire Fighters Union.

MALLETT, J. We granted leave to determine
(1) whether the township's annual pension fund
contribution mandated by Const 1963, art 9, § 24
must include current service costs and unfunded
accrued liabilities, (2) whether the township's annual contribution to the retirement system may be
determined by the retirement board's hired actuary in accordance with 1937 PA 345, and (3)
whether the trial court erred in not issuing a writ
of mandamus requiring the township to comply
with the retirement board's certified recommendation.

We find that Const 1963, art 9, § 24 expressly
requires the township to maintain the "actuarial
integrity" of the pension system to include unfunded accrued liabilities. We further find that the
authority delegated by MCL 38.552; MSA 5.3375(2)
to the retirement board does not unconstitutionally abrogate the taxation, budgetary, and legislative responsibilities of the township. In finding the
township's appropriation to be inadequate, we remand this case to the trial court for a determination consistent with this Court's holding that the
township maintain the actuarial integrity of the
pension retirement system.

### FACTS

On August 7, 1967, the residents of Shelby

Township voted by referendum to adopt the terms of 1937 PA 345 and authorize allotment of a tax of one-half mill to provide for the township's contribution to the Fire and Police Pension Fund. The Shelby Township Retirement Board, created under 1937 PA 345, administered the police and fire pension system as adopted by Shelby Township. Following the establishment of the pension system, the township collected and deposited into the pension fund the full proceeds from the one-half mill tax per year collected pursuant to the voter's authorization. The pension fund has accrued asset reserves totaling $5 million, and at no time has the pension fund ever defaulted on payment of any pension when it was due and payable.

Each year, the retirement board "certifies" the amount the township should contribute to the pension fund. The "certified" amount from 1979 through 1983 has been higher than the actual contributions made by the township. The sum contributed by the township nearly equaled the sum collected pursuant to the voter approved tax of one-half mill.

In 1983, the board commenced an action asking the trial court to issue a writ of mandamus directing the township board to appropriate and pay the difference between the board-certified amount, determined actuarially by Mrs. Sonnanstine of Gabriel, Roeder, Smith & Company, and what the township actually paid. The board's actuaries determined the pension fund to be underfunded through December 31, 1983, in the amount of $619,557, which is now $2,537,255.

The township, relying on the actuarial services of Mr. David Kays, stated that the board's actuarial determination was incorrect, and argued under applicable statutes and constitutional mandates that the township need only contribute annually

the greater of ten percent of aggregate payroll, current service costs, or enough to pay pensions in a given year.

The township filed a motion for summary disposition in Macomb Circuit Court. Judge Cashen declared that the township was not automatically obligated to contribute to the pension fund those amounts "certified" by the board. The court further ruled that the township had more than satisfied its minimum funding obligation. The court, however, noted that "[i]n the event additional resources are required to maintain an adequate liquidity, the Township would have the duty of providing said resources."

The board appealed by right to the Michigan Court of Appeals, which affirmed the decision of the trial court. 175 Mich App 163; 437 NW2d 352 (1989).

The board sought leave to appeal to this Court, which denied leave on April 4, 1990. 434 Mich 895. Upon a motion for reconsideration, this Court granted leave on October 25, 1990. 436 Mich 881.

I

To determine the annual contribution necessary to maintain the integrity of the township's pension system, we begin with an overview of Const 1963, art 9, § 24, which provides:

> The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby.
> Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.

The paramount concern of the 1961 Constitutional Convention, as it debated the precise language of this section, was to ensure the proper maintenance and the actuarial integrity of the state pension system.[1] The committee rejected pension funding methods which did not account for unfunded accrued liabilities, and which would result in the taxpayers' children bearing the financial burden of a failed pension system.

> But year after year, for more than a quarter of a century, the policy that has been followed nearly all the time has been to put into those funds just about enough to pay what you have to take out that same year. . . . We are simply accumulating debts that our children are going to have to pay. All we ask is that you don't get any farther behind than you are now. [2 Official Record, Constitutional Convention 1961, p 3184.]

The chairman of the Committee on Finance and Taxation, who endorsed proposed § 24, explained the problem:

> The problem here is extremely difficult. Any public system that is set up should have put into it each year sufficient money to meet all of the liability accrued during that year. If that is done from the very beginning, the system is not an excessive burden; but when you go for years without putting in enough money to cover the liability accruing each year, then to try to catch up for the past deficiency becomes a problem of magnitude. [1 Official Record, Constitutional Convention 1961, p 770.]

---

[1] [This] section is an attempt to rectify, in part, policies which have permitted sizeable deficiencies to pile up in retirement systems in this state. Under this section, accruing liability in each fiscal year must be funded during that year, thus keeping any of these systems from getting farther behind than they are now. [2 Official Record, Constitutional Convention 1961, p 3402.]

Michigan law, at the inception of art 9, § 24, viewed pensions as gratuitous allowances which could be revoked at will because of a lack of vested right in their continuation. See 54 ALR 940, § 155, p 942. This Court thoroughly examined the history and purpose of Const 1963, art 9, § 24 in determining the constitutionality of a proposed act which called for increases in a future pension plan. *Advisory Opinion re Constitutionality of 1972 PA 258,* 389 Mich 659; 209 NW2d 200 (1973).[2] Our interpretation of the constitutional framers' intent compelled us to conclude that the Legislature could not diminish or impair accrued financial benefits.[3] *Id.,* p 663.

In *Kosa v State Treasurer,* 408 Mich 356; 292 NW2d 452 (1980), this Court addressed challenges to the funding methods used in the Public School Employee's Retirement System. The limited holding in *Kosa* articulated that participants have no contractual right to enforce a particular funding system. *Id.,* pp 368-369. We rejected the suggestion that a "borrowing" scheme is constitutional.

> While the MPSERS Board acted altruistically in meeting the urgent needs of the "pre-con" retirees through its "borrowing" scheme, the board directly violated the specific language of Const 1963, art 9, § 24 . . . . [*Id.,* pp 367-368.]

The township practice of underfunding the pension system has resulted in the use of a "borrowing" scheme. We find the township board to be in a predicament similar to the MPSERS in *Kosa.* The township has placed the board in a position of

---

[2] See *Ass'n of Professional & Technical Employees v Detroit,* 154 Mich App 440; 398 NW2d 436 (1986).

[3] We defined "accrued financial benefits" as the right to receive certain pension payments on the basis of service performed. *Halstead v City of Flint,* 127 Mich App 148, 154; 338 NW2d 903 (1983), citing *Kosa v State Treasurer,* 408 Mich 356, 370-371; 292 NW2d 452 (1980).

paying off unfunded accrued liabilities with appropriations from current service cost contributions. This "borrowing" scheme leaves the board in a position where money, which should be used to fund both service costs and unfunded accrued liabilities, is sufficient only to meet the current service cost needs of the system.

In *Jurva v Attorney General,* 419 Mich 209, 224-225; 351 NW2d 813 (1984), we decided the capability of a school district to provide early retirement incentive payments in its collective bargaining agreement. To determine the central issue, we found it imperative to address the constitutionality of the "pay as you go" method of financing pension and retirement systems. There we defined "back door spending" as the practice of using current pension funds to finance pension liabilities accrued on account of past services rendered by employees. *Id.,* pp 224-225. See also *Kosa, supra,* pp 367-368. We concluded:

> If the school district were to fail to adequately fund the present accrued liability for pension benefits, the soundness of the pension system would be in jeopardy . . . . [*Jurva, supra,* p 225.]

Our assessment of art 9, § 24 and our examination of the constitutional debates, reveals the framers' clear intent to create a contractual obligation to ensure the full payment of financial benefits in the pension and retirement system. Permitting the township to fund only pensions payable in that year to current retirees and beneficiaries would unjustly alleviate the township of its obligation to fully fund the pension system.

We therefore find that the second paragraph of art 9, § 24 expressly mandates townships and municipalities to fund all public employee pension

systems to a level which includes unfunded accrued liabilities.[4]

## II

We acknowledge that the Michigan Constitution does not provide the specifics for meeting the funding obligations upon a retirement plan's unfunded accrued liabilities. We recognize, however, that 1937 PA 345 was adopted for the

> establishment, maintenance and administration of a system of pensions and retirements for the benefit of the personnel of fire and police departments, employed by cities, villages or municipalities . . . and to provide for the creation of a board of trustees to manage and operate same; to authorize appropriations and deductions from salaries . . . .

The township argues that if 1937 PA 345 requires the appropriation of funds sufficient to maintain the pension system at the level certified by the board, the Legislature has unlawfully delegated the township's taxation, budgetary, and legislative authorities to the board. We disagree. The Legislature has established a standard for arriving at an appropriate sum to be paid to the retirement board.

> For the purpose of creating and maintaining a fund for the payment of the pensions . . . the municipality . . . shall appropriate . . . an amount sufficient to maintain actuarially determined reserves covering pensions payable or which might be payable on account of service performed

---

[4] "Unfunded accrued liabilities" are the estimated amounts which will be needed according to actuarial projections to fulfill presently existing pension obligations . . . . [*Kosa, supra,* p 364, n 11.]

and to be performed by active members, and pensions being paid retired members and beneficiaries. The appropriations to be made by the municipality in any fiscal year shall be sufficient to pay all pensions due and payable in that fiscal year to all retired members and beneficiaries. The amount of such appropriation in any fiscal year shall not be less than 10% of the aggregate pay received during that fiscal year by members of the retirement system unless by actuarial determination it is satisfactorily established that a lesser percentage is needed. [1937 PA 345, as amended by MCL 38.559(2); MSA 5.3375(9)(2).]

In rejecting the township's argument, we initially turn to the language of MCL 38.552(2), (4); MSA 5.3375(2)(2), (4), which expressly delineate the powers and duties of the retirement board necessary to conduct the retirement system.

The retirement board created under this act shall perform the following:

\* \* \*

(2) Retain legal, medical, actuarial, clerical, or other services as may be necessary for the conduct of the affairs of the retirement system and make compensations for the services retained.

\* \* \*

(4) Certify to the governing body of the city, village, or municipality the amount to be contributed by the city, village, or municipality as provided in this act.

The provisions mandate that the board hire an actuary and then certify to the municipality an amount that covers current service costs as well as unfunded accrued liabilities. The express provisions of MCL 38.552(2), (4); MSA 5.3375(2)(2), (4), read in conjunction with MCL 38.559(2); MSA 5.3375(9)(2), clearly establish the authority and

describe the methodology necessary for the board to make an actuarial determination of the funds needed to maintain the retirement system.

On several occasions, this Court has upheld the obligation of a municipality to make payments on the basis of board certification. In *City of Ecorse v Peoples Community Hosp Authority,* 336 Mich 490; 58 NW2d 159 (1953), the Court addressed the validity of 1945 PA 47, as amended by 1949 PA 62 and 1952 PA 170, MCL 331.1; MSA 5.2456(1).[5] The statute provided "that a hospital board, created in the manner outlined by the statute, should be selected to direct and govern the functions of an authority." *Peoples Community Hosp Authority v City of Ecorse,* 342 Mich 510, 511-512; 70 NW2d 749 (1955).[6] The authority's duties included the preparation of the budget to cover estimated current expenses and expenses for capital outlay as well as provisions which deemed that money necessary to be raised was to be determined by the "constituent members of the authority." This Court concluded:

> The legislature, therefore, had the power to set up a maximum tax rate within which the authority could plan its budget and apportion the proportionate shares thereof to the participating municipalities. [336 Mich 503.]

This holding was further substantiated in *Bul-*

---

[5] The act authorized "2 or more cities, townships and incorporated villages, or any combination thereof, to incorporate a hospital authority for planning, promoting, acquiring, constructing, improving, enlarging, extending . . . and operating a community hospital; to provide for changes in membership therein; to authorize its member municipalities to levy taxes; to provide for the issuance of revenue bonds; to borrow money and to authorize condemnation proceedings." *Ecorse, supra,* p 499.

[6] See also *Huron-Clinton Metropolitan Authority v Bds of Supervisors of Five Counties,* 300 Mich 1; 1 NW2d 430 (1942).

*linger v Gremore,* 343 Mich 516; 72 NW2d 777 (1955), where we were called upon to address the validity of 1933 PA 94, as amended by MCL 141.101; MSA 5.2731. The statute granted a hospital authority the power to issue bonds to raise money for use in acquiring community hospitals. In the performance of its functions, the hospital board was authorized to obtain property through several avenues prescribed in the statute. We concluded that to the extent the township's authority to levy taxes stemmed from the Legislature's grant of that authority, the Legislature was free to restrict or delegate that authority. *Bullinger, supra,* pp 537-538.

We addressed a similar challenge to the constitutionality of delegating budgetary and legislative authority in *Dearborn Fire Fighters v Dearborn,* 394 Mich 229; 231 NW2d 226 (1975). There, the city argued that by authorizing the arbitration panel to grant increases in wages and other benefits, 1969 PA 312,[7] MCL 423.231; MSA 17.455(31), unlawfully delegated the city's power of taxation to the panel in violation of the state constitution. In rejecting the city's argument, we held:

> The orders of the arbitration panels do not in terms require an increase in taxes. . . . [I]mplicit in the power conferred by the Constitution on the Legislature to "resolve" disputes concerning public employees is legislative power to require, if need be, a public employer to provide the necessary funds subject to constitutional limitations . . . . The constitutional prohibition against surrender of the power of taxation has not been violated. [*Id.,* pp 245-246.]

Similarly, here, 1937 PA 345 does not violate the

---

[7] 1969 PA 312 granted a compulsory arbitration panel authority to set wages and other financial benefits for police and fire fighters.

constitutional prohibition against surrender of the power of taxation. There are no explicit provisions in the state constitution which confer upon charter township boards legislative or budgetary authority. However, the charter township act, MCL 42.27; MSA 5.46(27), requires:

> Not later than 60 days prior to the commencement of the fiscal year, the township board shall, by resolution, adopt the budget for the next fiscal year and shall, in that resolution, make an appropriation of the money needed for township purposes during the ensuing fiscal year of the township and provide for a levy of the amount necessary to be raised by taxes upon real and personal property for the municipal purposes of the township.

Township protection of pension system actuarial integrity is a proper municipal purpose. Pension system appropriation decisions do not become improper merely because the amount appropriated by the township is comparable to the contribution amount certified by the board.

Both parties have relied extensively upon *Thiesen v Dearborn City Council,* 320 Mich 446; 31 NW2d 806 (1948), as authority for determining a nonelected board's authority to recommend and appropriate funds for the township. In *Thiesen,* a conflict existed between a local city ordinance and the city charter, which vested the city council with full power and discretion in making appropriations. We held that because the charter invested in the city the power to appropriate funds, an ordinance which purported to delegate that power to the retirement board was an unlawful delegation of authority. *Id.,* p 454. Our decision was based solely upon the conflict between the ordinance and the charter.

"[C]ommon sense dictates that under these circumstances an initiated ordinance cannot be so broad as to change the intent and meaning of the city charter. It is adopted under the city charter and not as an indirect amendment of it." [*Id.*, p 453.]

We find the case at bar to be distinguishable from *Thiesen.* Unlike *Thiesen,* 1937 PA 345 and the charter township are not in conflict. We are interpreting the act in accordance with the state constitution to determine the township's contribution in order to maintain the integrity of the pension system. The viability of *Thiesen* is diminished further by the express provision of Const 1963, art 9, § 24 stating that pensions are contractual obligations of the state that political subdivisions may not impair. *Thiesen* and the line of cases that follow its holding were further rejected in *Kosa v State Treasurer, supra,* p 368.

The board argues that the language of 1937 PA 345 ("shall") obligates the township to appropriate funds to cover pensions earned by active members for services to be performed in the current year and earned by active members for services performed. By using "shall," the Legislature necessarily intended a mandatory obligation. *Transamerican Freight Lines, Inc v Quimby,* 381 Mich 149, 158; 160 NW2d 865 (1968).[8] We agree. MCL 42.27; MSA 5.46(27) and 1937 PA 345 are not inconsistent. The obligatory language, therefore, institutes in the township an obligation to "create[ ] and maintain[ ] a fund for the payment of the pensions

[8]    In construing legislative intent, we keep in mind our holding in regard to the mandatory word "shall" and construe the act and its amendments as a whole . . . . [*Id.*, pp 158-159. See also *Smith v School Dist No 6, Fractional, Amber Twp,* 241 Mich 366; 217 NW 15 (1928).]

and other benefits payable as provided in this act . . . ." MCL 38.559(2); MSA 5.3375(9)(2).

The township, nevertheless, contends that the statute, as read in 1967 and as it continued to be read in 1983, gave the township the option of providing funding for the pension system necessary to pay current retirees and beneficiaries or providing funding to pay for present and future service credit of current employees and beneficiaries. We disagree. By enacting 1937 PA 345, the Legislature exercised its plenary authority over municipalities for the purpose of providing adequate funding for police and fire retirement systems. The Legislature has the authority to enact legislation that will ensure the pension system is maintained. MCL 42.27; MSA 5.46(27). Once the voters of the township adopted the statutory pension system, they subjected themselves to the legislative controls associated with the proper funding of that system. See *Smith v Scio Twp,* 173 Mich App 381, 389; 433 NW2d 855 (1988). Therefore, the Legislature is limited only by constitutional constraints, none of which are impeded by imposition of the act.

On the basis of the rationale in *Ecorse, Bullinger,* and *Dearborn,* we find that when the Legislature delegates to an agency or unit of government the authority to establish levels of funding necessary for successful operation, that exercise does not constitute an unlawful delegation of the township's power or a restriction on the township's ability to control the appropriation of its funds. This finding does not strip the township of its right to question the actuarial methods of the board-hired actuary. Discussions regarding the amount certified by the board to the township may still be had, but must be guided by our conclusion that the

amount contributed by the township must cover pensions earned by active members for services to be performed in the current year, pensions earned by active members for services performed, and actual pensions to be paid to retirees.

The township questions the authority of the board to impose taxes in the event that additional revenues would be needed to satisfy the certified amount. How the township creates the revenues necessary to restore the "actuarial integrity" of the pension system is not an issue for the board or this Court.

III

The plaintiffs sought a writ of mandamus from the trial court to compel the township to appropriate the funds necessary to maintain the "actuarial integrity" of the pension system. Mandamus is an extraordinary remedy and only appropriate where there is a clear legal duty bearing upon the defendant and a clear legal right by the plaintiff to discharge that duty. *Livonia Drive-In Theater Co v Livonia,* 363 Mich 438, 446; 109 NW2d 837 (1961); *Oakland Co Bd of Co Road Comm v State Hwy Comm,* 79 Mich App 505, 509; 261 NW2d 329 (1977).

Maintaining a level of "actuarial integrity" in accordance with 1937 PA 345 will require the contribution of funds adequate to cover pensions earned by active members for services to be performed in the current year and earned by active members for services already performed, and actual pensions paid to the retirees. The certification of the retirement board is deemed an authoritative recommendation; the township is not compelled to accept the actuarial methods employed by the

retirement board actuary.[9] The township is, however, compelled by statute, MCL 38.559(2); MSA 5.3375(9)(2), to maintain the actuarial integrity of the pension system by funding current service costs as well as unfunded accrued liability and benefits due retirees. Unable to discern a clear legal duty on the part of the township to accept, without question, the actuarial method employed by the board, plaintiff's request for mandamus is denied.

### CONCLUSION

We conclude that MCL 38.559(2); MSA 5.3375(9)(2) mandates the township to annually contribute to the retirement system an actuarially determined amount, which will ensure that funds are available to cover pensions earned by active members for services to be performed (in the current year) earned by active members for services already performed, and actual pensions to be paid to retirees. We therefore remand this matter to the trial court where the township, recognizing its obligation to fully fund the pension system, may exercise its right to question only the actuarial methods used by the retirement board actuary. The trial court, at the conclusion of the hearing on this matter, shall determine the amount to be contributed by the township to the retirement board and shall enter an order consistent with this opinion.

CAVANAGH, C.J., and LEVIN, BRICKLEY, and RILEY, JJ., concurred with MALLETT, J.

BOYLE and GRIFFIN, JJ., concurred in the result only.

---

[9] "Although some actuaries may demur, it is our view that there is no formula that is the only 'correct' basis for actuarial funding. The choice is a matter of policy." [*Kosa* at 372, n 22. Emphasis deleted.]