BLODGETT v. FOSTER.

1. EQUITY JURISDICTION — COMPLICATED ACCOUNTS — INADEQUACY OF LEGAL REMEDY.

A suit in equity for an accounting is proper, though the accounts are all on one side, if there are circumstances of great complication or difficulty in the way of adequate relief at law.

2. SAME.

A bill for an accounting set out three lumbering contracts, together with two supplemental ones, involving many thousands of dollars, and extending over a long period of time. The lumber was divided into a great variety of grades, each grade having a separate price. The payments made under the contracts were numerous, and extended through a series of years. There was controversy as to whether certain moneys had been properly expended for insurance, and also as to whether other lumber had been shipped in place of a portion burned. *Held*, that complicated circumstances were shown which justified equity in taking jurisdiction.

Appeal from Kent; Grove, J. Submitted June 8, 1897. Decided November 17, 1897.

Bill by Delos A. Blodgett and Delos F. Diggins against John J. Foster and Henry N. Anderson for an accounting. From an order overruling a demurrer to the bill, defendants appeal. Affirmed.

*Crane, Norris & Stevens*, for complainants.

*Fitz Gerald & Barry* (*Francis A. Stace*, of counsel), for defendants.

LONG, C. J. This is an appeal from an order of the Kent circuit court in chancery overruling the demurrer of the defendants to the complainants' bill for want of equity. The bill is filed for an accounting. We shall state only the substantial averments of it, or such parts of

those averments as are necessary to a consideration of the questions involved.

The accounting prayed involves transactions under three contracts for the manufacture and sale of lumber. Copies of these contracts are made a part of the bill. It appears that on May 1, 1891, Clyde C. Chittenden, George E. Herrick, and William F. Chittenden, comprising the firm of Chittenden, Herrick & Co., agreed in writing with the defendants to sell them all the white pine cut from specified lands from the date of the agreement to May 1, 1892, estimated to be 5,000,000 feet or more. That firm agreed to manufacture this lumber in a good and workmanlike manner, and properly cross-pile and cover it; and the defendants agreed to pay for it the prices specified for the different grades. There were many different grades, too numerous to mention here, and a separate price for each grade. The stipulation as to payments was:

"Fifty per cent. cash for all lumber in yard, as estimated on the 1st day of May, 1891; for all lumber cut in the month of May, 50 per cent. cash on or before the 10th day of June, 1891, and so on during the life of this contract,—it being the intent and meaning of this contract that the advance payment shall be made on or before the 10th of one month for all lumber cut the previous month. The remaining 50 per cent. due on said lumber is to be paid as follows: For all lumber shipped one month, said parties are to pay for on or before the 15th of the following month, on actual measurement, in 90 days' acceptance, or cash discount of 8 per cent. All lumber to be paid for on or before nine months from the date of last estimate, or nine months from May 1, 1892."

The agreement had the following provision in regard to insurance against loss or damage by fire:

"Each party to pay one-half of the insurance up to the four-fifths value required by the standard lumber insurance form."

Chittenden, Herrick & Co. assigned this contract, June 1, 1892, to the Chittenden Lumber Company; and that

company agreed with the defendants, in writing, that the contract should continue in force for one year longer, ending May 1, 1893, with some changes made in respect to the prices of lumber. In July, 1893, the Chittenden Lumber Company assigned the contract to the Wexford Lumber Company. From May, 1891, Chittenden, Herrick & Co. and the Chittenden Lumber Company delivered to the defendants, at the place agreed upon, all the lumber sold by the said agreement and supplemental agreement, at the prices agreed upon; these deals amounting to about $71,000. The defendants from time to time made payments under these contracts. These payments were numerous, extending through three years or more from and after the date of the contract. Settlements were made between them, and adjustments had, upon all questions respecting the inspection and the grades of lumber sold under the contract. In March, 1896, the Wexford Lumber Company assigned all its rights under these contracts to the complainants.

In April, 1892, Chittenden & Herrick entered into a contract with the defendants to sell to them all the pine lumber to be manufactured from the timber on specified lands, estimated to cut 15,000,000 feet. The lumber was to be graded, and the contract fixed the price of each grade. The lumber was to be delivered f. o. b. The contract also fixed the time and terms of payment; also, contained an agreement that Chittenden & Herrick should keep the lumber insured to 80 per cent. of its value, and pay two-thirds of the cost of insurance,—the other one-third to be paid by the defendants. A supplemental contract was also made between these parties, by which the price of lumber should be $1 per 1,000 higher than the price named in the contract. Shipments were made from time to time under these contracts to the defendants, and all has been shipped except about 800,000 or 900,000 feet. This lumber was charged to the defendants at the prices stipulated in the contracts. The payments were numerous, and were made at various times during 1893 and

1894. Chittenden & Herrick kept the lumber sold under the contract insured as agreed. The defendants claim they effected additional insurance, and that Chittenden & Herrick and their assigns are indebted to them in the sum of several hundred dollars for such additional insurance. Some controversy arises also over the price of lumber under this and the supplemental contract. In August, 1892, Chittenden & Herrick assigned to the complainants all payments due or to become due from the defendants, and empowered the complainants to receive and receipt for such moneys; and in January, 1896, they assigned all the moneys due or to become due under the supplemental contract to the complainants.

In May, 1893, another contract was entered into between Clyde C. Chittenden and William F. Chittenden, under the firm name of the Chittenden Lumber Company, and the defendants, by which they agreed to sell to the defendants all their cut of pine and hemlock lumber and lath from May 1, 1893, to May 1, 1894, estimated at 5,000,000 feet, and to be cut from specified lands. Under this contract the different grades of lumber, lath, and timber were fixed at different prices; and the Chittenden Lumber Company agreed to load out the lumber upon the order of the defendants, and deliver the same on cars on Cadillac rate,—the defendants agreeing to pay all taxes on the lumber, and pay one-half of the insurance. The times and terms of payment were fixed by the contract. In February, 1894, the Chittenden Lumber Company assigned to the complainants all moneys due on the contract. In July, 1893, the Chittenden Lumber Company had assigned to the Wexford Lumber Company all its right, title, and interest in the contract. The Chittenden Lumber Company and its assigns, after the contract was executed, delivered to the defendants all the lumber and lath mentioned in the contract, and has fully performed it on its part. Shipments were large and numerous. The defendants paid from time to time to the Chittenden Lumber Company and its assigns for the lumber so de-

livered; such payments extending through the years
1893 and 1894. Under this contract the defendants also
claim moneys paid for additional insurance, and this is
also in dispute. Some claim is also made by the defend-
ants for certain lumber destroyed by fire. The Wexford
Lumber Company, in 1896, assigned this contract to the
complainants, and all its rights and interests thereunder.

It is alleged by the bill that the accounts in respect to
the contracts of May, 1891, April, 1892, and May, 1893,
are still open and unsettled. It is further set up in the bill
that the defendants claim and insist that all transactions
under the three contracts and the two supplemental con-
tracts should be considered on a final settlement, and that,
upon a settlement of all the transactions under the con-
tracts, they claim a balance of money coming to them;
and they threaten to commence an action at law against
the complainants for such moneys. The complainants in-
sist by the bill that if the accounts between Chittenden,
Herrick & Co., the Chittenden Lumber Company, Chit-
tenden & Herrick, the complainants, and defendants, in
respect to all the transactions under and in the performance
of the contracts mentioned, were properly taken, a balance
of $6,930 over and above all payments and set-offs would
be coming from the defendants to them, together with
interest thereon.

The only question to be determined is whether, under
the facts and circumstances alleged in the bill, the case
falls within any rule of equity in respect to an accounting.
It is contended by the defendants that the interposition of
a court of equity in matters of accounting can be invoked
only (1) where the defendant occupies a fiduciary relation
towards the complainant; (2) where a discovery is neces-
sary to enable the complainant to obtain relief; (3) where
the accounts are mutual and complicated. It is conceded
by all the parties that no fiduciary relations exist between
the parties here, and that no discovery is necessary to
enable the complainants to obtain relief. The only ques-
tion, then, is whether the accounts are mutual and com-

plicated, or whether the accounts are so complicated, though not mutual, that a court of equity will take cognizance of the case.

It is contended by the defendants that the account must be not only complicated to such an extent as to render it practically impossible to take it in a suit at law, but must be mutual, while, on the part of the complainants, it is contended that where the accounts are all on one side, but there are circumstances of great complication or difficulty in the way of adequate relief, a bill for an accounting is well brought, on the sole ground that it is the most convenient remedy.    Many authorities have been cited by counsel in their briefs; each contending that, under the authorities so cited, his contention is well sustained.    It is contended by the defendants that while the bill alleges, in general terms, that the accounts are mutual, long, and complicated, and cannot be properly taken except in a court of equity, yet that no fact or circumstance is shown in support of this statement, and that, under well-adjudicated cases, such general averments are not sufficient to give jurisdiction to courts of equity, but that facts and circumstances from which the court can see that such complications exist must be shown.

We are satisfied, from a reading of the bill, that these accounts, of necessity, must be greatly complicated. Three contracts are set out, together with two supplemental ones.    These contracts extend over a long period of time, and involve many thousands of dollars.    There is a great variety of grades of lumber in each contract, each grade having a separate price.    Payments were made under them, extending through a series of years.    Great controversy arises over the insurance paid by the defendants,—whether it was properly and legitimately paid. There is also controversy over some portion of the lumber burned, and whether other lumber was shipped in place of it.    So that if a court of equity will take cognizance of a case of accounting where the accounts are complicated, and where there would be great difficulty in the way of

adequate relief by an action at law, it seems to us that this is one.

In *Appeal of Brush Electric Co.*, 114 Pa. St. 574, the bill was dismissed below upon the ground that the complainants had an adequate remedy at law. The supreme court of Pennsylvania reversed that ruling, saying:

"Equitable jurisdiction does not depend on the want of a common-law remedy; for, while there may be such a remedy, it may be inadequate to meet all the requirements of a given case, or to effect complete justice between the contending parties; hence the exercise of chancery powers must often depend on the sound discretion of the court. So a bill may be sustained solely on the ground that it is the most convenient remedy."

In *Society of Shakers* v. *Watson*, 37 U. S. App. 141 (15 C. C. A. 632), speaking of the jurisdiction of courts of equity where no adequate remedy at law was believed to exist, it was said:

"A large branch of equity jurisdiction has always been concurrent with that of the courts of law; that is, has extended over the same general subjects as those taken cognizance of in actions at law, but where, from the nature of the circumstances, and on account of the inadequacy of its remedies, a court of law cannot afford the due and appropriate relief."

In *Weymouth* v. *Boyer*, 1 Ves. Jr. 416, 424, Mr. Justice Buller, sitting for the lord chancellor, says:

"We have the authority of Lord Hardwicke that if a case was doubtful, or the remedy at law difficult, he would not pronounce against the jurisdiction of this court. The same principle has been laid down by Lord Bathurst."

Several other Pennsylvania cases, aside from those quoted from, hold that if the accounts are all on one side, but there are circumstances of great complication or difficulty in the way of adequate relief, a bill for an accounting is well brought, on the sole ground that it is the most convenient remedy. In *Johnston* v. *Price*, 172 Pa. St. 427, it was said:

"It is almost a work of supererogation to cite the perfectly familiar authorities that, in order to oust the equitable jurisdiction, the remedy or supposed remedy at law must be full, adequate, and complete, or that equitable jurisdiction does not depend on the want of a common-law remedy, but may be sustained on the ground that it is the most convenient remedy."

The rule is laid down in 3 Pom. Eq. Jur. (2d Ed.) § 1421, that:

"A suit in equity for an accounting is proper where the accounts are all on one side, but there are circumstances of great complication, or difficulties in the way of adequate relief at law."

We think the following authorities and cases also sustain this proposition: 1 Enc. Pl. & Prac. 95; *O'Connor* v. *Spaight*, 1 Schoales & L. 305; *Corporation of Carlisle* v. *Wilson*, 13 Ves. Jr. 276; *Farmers & Mechanics' Bank* v. *Polk*, 1 Del. Ch. 167; *Darthez* v. *Clemens*, 6 Beav. 165; *Kennington* v. *Houghton*, 2 Younge & C. 620; *Taff Vale R. Co.* v. *Nixon*, 1 H. L. Cas. 110; *South Eastern R. Co.* v. *Brogden*, 3 MacN. & G. 8; *Watt* v. *Conger*, 13 Smedes & M. 412; *Seymour* v. *Dock Co.*, 20 N. J. Eq. 396; *Kimberley* v. *Dick*, L. R. 13 Eq. 1; *Kirby* v. *Railroad*, 120 U. S. 136; *Devereux* v. *McCrady*, 46 S. C. 133.

In *Mitchell* v. *Manufacturing Co.*, 2 Story, 648, the bill was filed for an accounting. Defendants demurred upon the ground that the complainants had a complete remedy at law. Mr. Justice Story said:

"It is certainly true that, in matters of account, courts of equity possess a concurrent jurisdiction, in most, if not in all, cases, with courts of law. In the present case, taking the statements of the bill to be true, which we must upon the demurrer, it seems to us not only clear that it is a case fit for the interposition of a court of equity, but that it is emphatically so, as one where a court of law could not render any justice in the matter, or, if any, it must be a very crippled and imperfect redress. It is, indeed, impossible to read the bill, and not to feel that some of the claims there set up, considering the complica-

tions and changes of interests of the parties, cannot be adequately examined or properly disposed of except in a court of equity."

*Seymour* v. *Dock Co., supra,* was a bill for an accounting. The demand on one side was for labor and material; and, on the other side, the extent of the liability to pay. The master said:

"The whole machinery of courts ·of equity is better adapted for the purposes of an account than that of the courts of common law, and in many cases, as has been said, when accounts are complicated it would be impossible for courts of law to do entire justice between the parties. Courts of equity, in cases of complex accounts, take cognizance sometimes from the very necessity of the case, and from the incompetency of a court of law, at *nisi prius,* to examine it with the necessary accuracy. In this case, on this ground alone, I think jurisdiction of this cause must be maintained, even supposing the objection had been duly raised."

In *Taff Vale R. Co.* v. *Nixon, supra,* it was said:

"Each case must be decided according to the peculiar circumstances belonging to it. It is therefore nothing to the purpose to show that there are cases where the court will not entertain jurisdiction because it is a matter of law. Each case must be investigated in order to see whether it comes within the rule laid down as that upon which a court of equity exercises its jurisdiction."

We are satisfied in the present case that, though the accounts may not be mutual, there are circumstances of such complication in the way of adequate relief at law that a court of equity should retain jurisdiction.

The order overruling the demurrer will therefore be affirmed, and the defendants will have 20 days from this date to answer over.

GRANT, MONTGOMERY, and MOORE, JJ., concurred. HOOKER, J., did not sit.