BLODGETT v. FOSTER.

1. CONTRACTS — ABANDONMENT — SUBSTITUTED AGREEMENT — CONSIDERATION.

Plaintiffs' assignor, after entering upon the performance of a contract with defendants for the sale of lumber to be cut from a large tract of land, decided, because of its unprofitableness, to abandon it, and respond in damages, rather than attempt to fulfill it. Defendants desired the completion of the contract, and to that end entered into a new agreement, whereby they were to pay an increased price for the lumber if the contract was faithfully performed. Under this agreement, the contract was carried out by the seller, defendants from time to time giving their acceptances for the lumber at the increased rate. *Held*, that the new contract was based upon a sufficient consideration, and that defendants were bound by it.

2. SAME—INSURANCE—VALUE.

A contract for the sale of lumber provided that the seller should make monthly statements to the purchaser, showing the quantity and grades of lumber in the yards, and should procure such lumber to be insured, at the joint expense, to a specified percentage of its value. *Held*, that the contract price was to be treated as the value for the purpose of insurance.

3. SAME—TIME—WAIVER.

Where one who sold under contract certain lumber to be cut and delivered to the purchaser, finding himself unable, because of litigation, to begin work until some months after the time agreed upon, explained the situation to the apparent satisfaction of the purchaser, and the latter thereafter accepted the lumber manufactured under the contract, making no claim, in any of the numerous statements of account submitted by him, for damages for delay, he (the purchaser) will be deemed to have waived the terms of the contract as to time of performance.

Appeal from Kent; Grove, J. Submitted April 4, 1899. Decided June 19, 1899.

Bill by Delos A. Blodgett and Delos F. Diggins against

John J. Foster and Henry N. Anderson for an account-
ing.   From a decree for complainants, defendants appeal.
Affirmed.

*Crane, Norris & Stevens,* for complainants.

*Fitz Gerald & Barry* (*Francis A. Stace,* of counsel),
for defendants.

MOORE, J.   A reference to the report of this case when
it was here before (*Blodgett v. Foster,* 114 Mich. 688)
will do away with need of making so long a statement of
the case as would otherwise be necessary.   Upon the trial
of the case the witnesses were examined in open court.
As a result of concessions made by the solicitors in open
court, there are not many questions now open for contro-
versy.   One of the most important questions relates to
the effect of a contract reading as follows:

"In consideration of the faithful performance of the
above and foregoing contract by the parties of the ·first
part, which they agree to do, it is hereby agreed by the
parties that the prices for lumber shall be one dollar per
M. feet higher than prices named in the within contract.
                "CHITTENDEN & HERRICK,
                "By C. C. CHITTENDEN.
                "JOHN J. FOSTER & Co.,
                "By JOHN J. FOSTER."

This contract was made in April, 1893, and was in-
dorsed upon a contract, known as the "Lake City Con-
tract," dated April 23, 1892, between the same parties,
providing for the sale of lumber to be cut from standing
timber estimated to make 15,000,000 feet.   There is
not very much controversy about the circumstances under
which this contract was made.   Chittenden & Herrick
had entered upon the manufacture of the lumber.   The
stock did not turn out as they expected.   It was either
very good or very poor.   There was but very little of the
intermediate grades.   They found they could not carry
out the contract without loss.   They concluded that, in

justice to themselves and their creditors, they ought not to continue it; that it would be better for them and their creditors that they should become liable for any damages for its breach, rather than to attempt to carry it out, and they decided not to carry it out. After reaching this conclusion, Mr. Chittenden had an interview with defendants, and explained the situation fully to them, when it was agreed that defendants would advance the price a dollar a thousand, and Chittenden & Herrick should complete the contract. Prior to this, Foster & Co. had been authorized to make payments on the contract to Blodgett & Co., who were authorized to receive them. Later a copy of this contract of April, 1893, was attached to the copy of the prior contract in the hands of Blodgett & Co., and the contracts were assigned to them. After this contract was made, lumber was manufactured and shipped to Foster & Co., who prepared statements, some 19 of them, showing the amounts received by them, in which the lumber was billed at the enhanced price, and acceptances for the balances shown by these statements were remitted by them to Blodgett & Co. 13,500,000 feet of lumber was manufactured under these two contracts, and was received by defendants. It is now claimed by them there was no consideration for the contract of April, 1893, and that they should not be bound by their statements or by the contract. It is contended by complainants that defendants are bound for two reasons:

1. Because Chittenden & Herrick decided to give up the old contract, and this was assented to by the defendants' consenting to make a new contract, in which the price of the lumber should be one dollar a thousand greater than in the old contract.

2. Because Blodgett & Co., who were bankers, made large advances to Chittenden & Herrick on the strength of this new contract, of which Foster & Co. had knowledge.

The circuit judge found in favor of the contention of complainants.

The authorities are conflicting as to whether such a contract as the one of April, 1893, is based upon a sufficient consideration. The question is not an open one, however, in this State. In *Moore* v. *Locomotive Works*, 14 Mich. 266, defendant refused to complete its contract with the plaintiffs, except under a substituted agreement. In disposing of the case, after a review of the authorities, Justice COOLEY, speaking for the court, said:

" Each of these cases is to the point now in issue before us. It is true that in each the abandonment of the contract by the plaintiff was before very much had been done under it, and on the claim that the bargain was a hard one upon him. But neither of these circumstances can distinguish the cases from the present. An unprofitable contract is not, by that circumstance, made any the less binding on the promisor; and the promisee has the same right and the same power to discharge a contract in consideration of a new promise, after breach as before. A different case would be presented if the plaintiffs below had relied upon an agreement to waive the damages, made after delivery, for in that case nothing would have remained for them to do or to promise which could be a consideration for the waiver. But here, although they had done the work which enabled them to deliver the engine, they refused altogether, according to their statement, to go further, except under the substituted agreement; so that the plaintiffs in error actually received the property under the promise which they now insist is invalid. If they regarded it for their interest at the time to make the arrangement, and have obtained the property under it, it is not in our power now to set it aside on the ground of their being entitled to just as much under the contract before existing. They knew their legal rights at the time, and must be supposed to have consulted their own interests in entering into the new arrangement."

In *Goebel* v. *Linn*, 47 Mich. 489 (41 Am. Rep. 723), an ice company had agreed with a brewer to furnish him ice for the ensuing season at $1.75 a ton. The crop of ice harvested in the winter was a short one. Ice was furnished under the contract until May, when the ice company refused to furnish any more for less than $3.50 a ton. The

brewer agreed to pay this, and ice was furnished under this agreement. It was claimed by the brewer that the ice company took advantage of his necessities, and the new contract was made under duress. It was also claimed he obtained only what by his contract he was entitled to have at the lower price, and the new contract was without consideration. The court said:

" It is very manifest that there is no ground for saying that the note in suit was given without consideration. It was given for ice which was furnished by the payee to the defendants, which was owned by the payee and bought by the defendants, and for which defendants concede their liability to make payment. What the defendants dispute is the justice of compelling them to pay the sum stipulated in the note, when, according to their previous contract, they ought to have received the ice for a sum much smaller. The defense, therefore, is, not that the consideration has failed, but that a note for a sum greater than the contract price has been extorted under circumstances amounting to duress. It is to be observed of these circumstances that, if we confine our attention to the very time when the arrangement for an increased price was made, the defendants make out a very plausible case. They had then a very considerable stock of beer on hand, and the case they make is one in which they must have ice at any cost, or they must fail in business. If the ice company had the ability to perform their contract, but took advantage of the circumstances to extort a higher price from the necessities of the defendants, their conduct was reprehensible, and it would, perhaps, have been in the interest of good morals if defendants had temporarily submitted to the loss, and brought suit against the ice company on their contract. * * * But the defendants did not elect to take that course. They chose, for reasons which they must have deemed sufficient at the time, to submit to the company's demand, and pay the increased price, rather than rely upon their strict rights under the existing contract. What these reasons were is not explained to us, except as above shown. * * * What is certain is that the parties immediately concerned, and who knew all the facts, joined in making a new arrangement, out of which the note in suit has grown. The case of *Moore* v. *Locomotive Works*, 14 Mich. 266, where a

similar case was fully considered, is ample authority for supporting the new arrangement."

See *Conkling* v. *Tuttle,* 52 Mich. 630.

In this case, if Chittenden & Herrick did not go on with their contract, defendants could have sued them for a breach of it. They did not see fit to do this, but, instead, agreed, in order to have the contract completed, they would pay one dollar a thousand more for the lumber. Relying upon this agreement, Blodgett & Co. made advances to Chittenden & Herrick, who manufactured the lumber, relying upon the new agreement. The defendants received the lumber under the new agreement, and from time to time sent their acceptances, for the amount due upon the basis of the new agreement, to Blodgett & Co. Under these circumstances, we do not think they can say they are not bound by the agreement.

The next question of importance relates to one item of $325 paid for insurance on the Hoxeyville contract, and one item of $1,033.34 for insurance on the Lake City contract, which it is claimed complainants should pay. The circuit judge rejected these items. Whether they should be rejected or not depends upon the construction to be given to the provisions contained in the contracts in relation to insurance. In the first-named contract, the parties of the second part therein agree to pay one-half of the insurance on said lumber. In the Lake City contract the language as to insurance is: "Said Chittenden & Herrick agree to keep said lumber insured to 80 per cent. of its value, and to pay two-thirds of the cost of the insurance; the other third to be paid by the parties of the second part." It is the claim of Chittenden & Herrick that the lumber was to be insured treating its value as being the price for which they sold it. Defendants claim it was to be insured for its market value, irrespective of the price which they paid for it. The question is not free from difficulty. The insurance was to be of lumber at Hoxeyville and Lake City. Its value there was, doubtless, what

the parties had in mind. Chittenden & Herrick were required to make a monthly statement to Foster & Co. of the quantity of lumber in the yards, and of the different grades and qualities. With this statement in hand, and the prices named in the contract which were to be paid for the lumber, it was a simple matter of computation to learn what the value of the lumber was which was to be insured. Chittenden & Herrick were to procure the insurance. If the price for which they sold the lumber was not to be regarded as its value for insurance purposes, how could they arrive at the amount for which it should be insured? It was not marketed by them to anybody except the defendants. They had no way of knowing how much it brought in the market. The defendants never furnished them monthly statements of its value, based upon the price it brought in the market. Mr. Foster testified it was none of the business of Chittenden & Herrick for what Foster & Co. sold the lumber. There was no testimony in the case showing what the various grades of the lumber was worth, from month to month, at Hoxeyville and Lake City, except as it may be inferred it was worth the price for which Chittenden & Herrick sold it to Foster & Co. We think that price should govern in construing these contracts.

The remaining important question for discussion is a claim of $4,000 damages for delay in commencing the work at Lake City. The contract provided the work should be commenced June 15, 1892. It was not commenced until September or October. The cause of this delay is explained by Mr. Chittenden as caused by litigation between the party from whom they bought the timber and one who claimed adverse title to it. This litigation resulted in the person from whom they bought the timber being enjoined from selling it. He said the matter at the time was explained to Mr. Foster, who said he was entirely satisfied, and to go ahead with the manufacture. An examination of the record convinces us the defendants were satisfied with the explanation, and excused the

delay. There were upwards of 13,000,000 feet of lumber manufactured by reason of this contract. A great many statements of account were made by the defendants, and a great mass of correspondence resulted in relation to it. No claim was made, in these statements or in this correspondence, of any intention to claim any damages because of the delay in commencing the work. These statements are 21 in number, running over a period of nearly two years. No item for damages was charged against Chittenden & Herrick upon the books of defendants. The contract of April, 1893, was made after this delay occurred. There is nothing to indicate any claim of damages until they filed their answer in this case. They accepted the lumber manufactured under this contract, making no claim on account of delay. By accepting and retaining the lumber under such circumstances, they have waived the terms of the contract as to time. See *Crane* v. *Wilson*, 105 Mich. 554.

The claims for damages on account of misgrading the lumber and lath, and for wrongful piling of lumber, have been considered, but we do not deem it necessary to discuss them. We do not think the court erred in his disposition of the case.

The decree is affirmed, with costs.

GRANT, C. J., MONTGOMERY and HOOKER, JJ., concurred. LONG, J., did not sit.