MUSSELMAN v GOVERNOR (ON REHEARING)

Docket Nos. 97322, 97915. Argued October 11, 1995 (Calendar No. 7).
    Decided February 12, 1996.

Ann Musselman and other current and retired members of the
    Public School Employees Retirement System sought mandamus
    in the Court of Appeals to compel prefunding of health care
    benefits for the 1991-92 fiscal year. The Court of Appeals,
    REILLY, P.J., and CORRIGAN, J. (CAVANAGH, J., concurring),
    denied the petition, ruling that it was without authority to
    order the relief requested (Docket No. 142142). The plaintiffs
    again sought mandamus to compel prefunding for the 1992-93
    fiscal year, which the Court, REILLY, P.J., and HOOD and
    CORRIGAN, JJ., denied (Docket No. 166792). The plaintiffs ap-
    pealed.

    The Supreme Court, in an opinion by Justice BOYLE, joined
    by Chief Justice BRICKLEY, and Justices CAVANAGH and
    MALLETT held that although failure to prefund retirement
    health care benefits for members of the Public School Employ-
    ees Retirement System violates Const 1963, art 9, § 24, manda-
    mus must be denied because the Supreme Court has no author-
    ity to order the Governor or the Legislature to appropriate
    funds under these circumstances. Justice RILEY, joined by Jus-
    tice LEVIN, concurring in part and dissenting in part, stated
    that because financial benefits do not include health benefits
    for purposes of Const 1963, art 9, § 24, the funds were not
    constitutionally dedicated under Const 1963, art 9, § 24 and
    could be cut by the Governor under Const 1963, art 5, § 20. The
    plaintiffs should be denied relief. Justice WEAVER took no part
    in the decision of the case. 448 Mich 503 (1995).

    On rehearing, in separate opinions, the Supreme Court de-
    nied mandamus.

    Chief Justice BRICKLEY, writing separately, joined the ration-
    ale and result of the opinion of Justice BOYLE only to the extent
    that it denies the request for mandamus.

    Justice RILEY, joined by Justice LEVIN, continued to adhere to
    the views expressed in her original opinion in this case. 448
    Mich 524-533.

    Justice WEAVER, writing separately, concurred with Justice
    RILEY and further stated that health care benefits were not

contemplated by the drafters of Const 1963, art 9, § 24. The Legislature's decisions first to offer health care benefits to retirees and later to prefund those benefits cannot legitimately be construed as creating a constitutional mandate for prefunding. The Legislature cannot amend the constitution simply by adopting legislation that incorporates language from a constitutionally mandated provision. Health care benefits are not included within the "accrued financial benefits" of Const 1963, art 9, § 24, and the plaintiffs' request for relief should be denied.

Justice BOYLE, joined by Justices CAVANAGH and MALLETT, writing separately, stated that the temporary injunction granted by the Supreme Court to prevent the impending transfer of $139.5 million from the Michigan Public School Employees Retirement System to local school districts should be extended until further order of the Court. The parties should be invited to submit additional briefing regarding the effect of Proposal A and the appropriateness of making the injunction permanent or, alternatively, transferring the fund to the local districts with the restrictions intact.

Proposal A shifted the full cost of retirement for public school employees from the state to local school districts, with the local districts now responsible for all MPSERS retirement contributions, including health benefits. The constitution requires prefunding of pension benefits unconditionally promised, and while the Supreme Court does not have the authority to require the Legislature to appropriate funds for retirement health care benefits, it has the authority to enjoin dispersal of the $139.5 million in the MPSERS health reserve account to pay for unfunded health care obligations. Preventing dispersal of the fund does not necessarily mean that the fund could not be transferred to local districts, which are now responsible for health benefits, to pay for health care obligations that arose during the period those monies were set aside.

*White, Przybylowicz, Schneider & Baird, P.C.* (by *Karen Bush Schneider, James A. White, Suzanne Krumholz .Clark,* and *Jeffrey C. Murphy*), for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Susan I. Leffler* and *Michael J. Moquin,* Assistant Attorneys General, for defendants-appellees.

Amici Curiae:

*Graham K. Crabtree,* Assistant Senate Majority Counsel, *Alfred H. Hall,* Senate Majority Counsel, *Judith M. Barton,* Chief Policy and Legal Counsel, and *Laura A. Chappelle,* Attorney, for Dick Posthumus, Paul Hillegonds, Harry Gast, Donald Gilmer, Dan DeGrow, and Glenn Oxender.

*Howard & Howard Attorneys, P.C.* (by *Donald F. Tucker, Wade E. Haddad,* and *Ellen M. Harvath*), for Michigan Association of Retired School Personnel.

*Jack Timmony,* Assistant Corporation Counsel, for the City of Detroit Law Department.

*Cohl, Stoker & Toskey, P.C.* (by *Peter A. Cohl* and *David M. Foy*), for Michigan Association of Counties, Michigan Townships Association, and Michigan Municipal League.

*Michael J. VanOverbeke* for the City of Detroit Employees Benefit Plan.

*Varnum, Riddering, Schmidt & Howlett* (by *John Patrick White*) for Ferris State University, Eastern Michigan University, Western Michigan University, Michigan Technological University, and Northern Michigan University.

ON REHEARING

BRICKLEY, C.J. (*concurring in part and dissenting in part*). With the benefit of rehearing and reconsideration of the merits of this significant case, I find that I cannot, as I did in this Court's original offering, join the opinion of Justice BOYLE to the extent that it finds it necessary to interpret the meaning of "financial benefits" as the term applies to Const 1963, art 9, § 24.

That opinion concludes, as did the Court of

Appeals, that there is no legally acceptable remedy by which the executive or legislative branch can be compelled to appropriate funds in order to comply with art 9, § 24 of the Michigan Constitution, regardless of the construction given to the term "financial benefits."[1]

It is a well-accepted principle of constitutional jurisprudence that courts do not engage in constitutional interpretation that is unnecessary to the disposition of the case at hand.[2] The relief sought by the instant plaintiffs—a mandamus compelling the Legislature to appropriate sufficient resources to prefund their pension benefits as provided in art 9, § 24, is not advanced by the outcome of the debate over whether the framers of our state constitution intended the words "financial benefits" to include the health care benefits that have been added to the plaintiff's pension plan.

Accordingly, I join the rationale and result of the opinion of Justice BOYLE, only to the extent that it denies the request for mandamus.

RILEY, J. I continue to adhere to the views expressed in my opinion of April 25, 1995. 448 Mich 503, 524-533; 533 NW2d 237 (1995).

[1] One aspect of the plaintiffs' request for relief that would not intrude on the prerogatives of the executive and legislative branches is that the state be enjoined from transferring those funds that remain in the health benefits fund, MCL 38.1334; MSA 15.893(144)—a fund that was a subject of our stay order at the time rehearing was granted. See *Kosa v State Treasurer*, 408 Mich 356; 292 NW2d 452 (1980). Those funds represent less than ten percent of the predicted amounts needed to carry out the plaintiffs' requested relief. In my view, that does not alter the conclusion that plaintiffs' request for relief is substantially unavailable regardless of the constitutional interpretation of the term "financial benefits." For the same reason, I would vacate the temporary stay.

[2] "[F]ew principles of judicial interpretation are more firmly grounded than this: a court does not grapple with a constitutional issue except as a last resort." *Taylor v Auditor General*, 360 Mich 146, 154; 103 NW2d 769 (1960).

Levin, J., concurred with Riley, J.

Weaver, J. (*separate opinion*). I concur with Justice Riley's opinion, but write separately to state the following.

### INTERPRETATION OF CONST 1963, ART 9, § 24

Michigan has long held that when interpreting the constitution it is the duty of the Court to determine the dominant purpose of the people when they approved the provision in question.

> "A Constitution is made for the people and by the people. *The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it.* 'For as the Constitution does not derive its force from the convention which framed [it], but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, *but rather that they have accepted them in the sense most obvious to the common understanding . . . .*' " [*Michigan Farm Bureau v Secretary of State,* 379 Mich 387, 391; 151 NW2d 797 (1967), quoting Cooley, Constitutional Limitations (6th ed), p 81, quoting *May v Topping,* 65 W Va 656, 660; 64 SE 848 (1909).]

The Court may also examine the historical circumstances surrounding the adoption of a constitutional provision in order to ascertain its common understanding. *People v Harding,* 53 Mich 481, 485; 19 NW 155 (1884); *Traverse City School Dist v Attorney General,* 384 Mich 390, 405; 185 NW2d 9 (1971). The intent of the framers as contained in the record of the Constitutional Convention is a helpful aid in clarifying any ambiguous provisions. *People v Blodgett,* 13 Mich 127, 165 (1865); *Re-*

*gents of the Univ of Michigan v Michigan,* 395
Mich 52, 60; 235 NW2d 1 (1975).

The constitutional provision at issue reads as
follows:

> The accrued financial benefits of each pension
> plan and retirement system of the state and its
> political subdivisions shall be a contractual obliga-
> tion thereof which shall not be diminished or
> impaired thereby.
>
> Financial benefits arising on account of service
> rendered in each fiscal year shall be funded during
> that year and such funding shall not be used for
> financing unfunded accrued liabilities. [Const 1963,
> art 9, § 24.]

The first paragraph of § 24 defines the scope of its
applicability. The financial benefits subject to the
prefunding requirement of the second paragraph
include only "accrued financial benefits *of each
pension plan and retirement system.*" (Emphasis
added.) The pension and retirement systems in
place at the time of the 1961 Constitutional Con-
vention consisted solely of monies paid in the form
of a monthly stipend to a retired employee based
on years of service. To the electorate, the juxtapo-
sition could not have been more clear: financial
benefits of each pension plan and retirement sys-
tem would be prefunded. However, it would not
have been anticipated that these systems included
health benefits because health benefits simply did
not exist, nor were they expressly included within
the scope of accrued financial benefits.

The legislative history surrounding enactment of
§ 24 makes clear exactly which "benefits" the
Legislature contemplated prefunding: "Now, it is
the belief of the committee that the *benefits* of
pension plans are in a sense *deferred compensa-
tion for work performed.*" 1 Official Record, Consti-

tutional Convention 1961, p 771 (emphasis added). Later in the same discussion, committee member Van Dusen stated:

> [T]he words "accrued financial benefits" were used designedly, so that the contractual right of the employee would be limited to the *deferred compensation* embodied in any pension plan, and that we hope to avoid thereby a proliferation of litigation by individual participants in retirement systems talking about the general benefits structure, or something other than his specific right to receive benefits. [*Id.* at 773-774 (emphasis added).]

The case before the Court today is exactly the type of litigation that the convention delegates sought to prevent. Health benefits are not a form of "deferred compensation," but rather have become a part of the general benefits structure. I believe health benefits are not a form of deferred compensation because they are not provided as a form of remuneration for work performed, but rather are more akin to a fringe benefit. MCL 38.1304; MSA 15.893(114) of the Public School Employees Retirement Act defines "compensation" as "remuneration earned by a member for service performed," but specifically excludes "hospitalization insurance and life insurance premiums, [and] other fringe benefits paid by and from the funds of employers of public school employees . . . ."

I believe that when art 9, § 24 was drafted health care benefits were *not* included within the scope of prefunded benefits. It was not until 1974, thirteen years after the Constitutional Convention, that health benefits were made available. Because of the growing cost of health care, 1974 PA 244, § 27e provided for a monetary supplement of up to $25 a month for health insurance premiums for retired school personnel. House Legislative Analy-

sis, HB 5888, May 15, 1974. In 1983, the Legislature amended the statute to provide for one hundred percent of employee's health insurance. 1983 PA 143. The 1983 amendment reiterated the Legislature's position that "[t]he state has been paying the cost of health insurance premiums for retirants since 1975. The funds for these payments are a *line-item in annual appropriations bills.*" House Legislative Analysis, HB 4611, June 16, 1983 (emphasis added). If health insurance was constitutionally mandated for prefunding in 1963, why the need for these two pieces of legislation, and why the line-item status?

I believe that the confusion that we face today regarding the status of health care benefits can be traced to 1985 PA 91 (HB 4192). HB 4192 was introduced in response to this Court's ruling in *Kosa v State Treasurer,* 408 Mich 356; 292 NW2d 452 (1980). The bill attempted to alter the actuarial basis for determining funding appropriations, but, additionally, it altered the funding status of health care benefits. In the House Legislative Analysis (the publication used to educate the Legislature regarding the purpose for a proposed bill) the following statement is made:

> Currently, *retirement allowance benefits are "prefunded"* based on a level percentage of payroll determined by actuarial assumptions. *Health coverage for retirees is financed by an annual appropriation of the legislature.* Under the bill, *health coverage would also be "prefunded"*; language specifying an annual appropriation for this purpose would be stricken. [First Analysis, April 24, 1985, p 2 (emphasis added).]

Here the analysis clearly acknowledges that "retirement benefits" are a different class of benefits from "health coverage." The chronology exposes

the fact that the Legislature did not believe that § 24 of the constitution mandated that health benefits be prefunded.

Thus, the error of plaintiffs' position is their assumption that the Legislature can retroactively amend the constitution, e.g., expand the scope of the prefunding requirement, without a public referendum.

## CONCLUSION

I believe health care benefits were not contemplated by the drafters of the 1963 Constitution. Furthermore, the Legislature's decisions first to offer health care benefits to retirees and later to prefund those benefits cannot legitimately be construed as creating a constitutional mandate for prefunding. The Legislature cannot amend the constitution simply by adopting a piece of legislation that incorporates language from a constitutionally mandated provision.

Because I concur with Justice RILEY's analysis of the Governor's budget-cutting powers and because I believe that health care benefits are not included within the "accrued financial benefits" of art 9, § 24, I would deny plaintiffs' request for relief.[1]

BOYLE, J. (*separate opinion*). After thorough review of the arguments raised by defendants on reconsideration and careful reflection of our position, we would reaffirm all portions of this Court's April 25, 1995, majority opinion. *Musselman v Governor,* 448 Mich 503; 533 NW2d 237 (1995).

---

[1] Because we have addressed the substantive issue we need not address the issue of mandamus. Mandamus is an extraordinary remedy and is appropriate only "when there is, in practical terms, no other remedy, legal or equitable, which might achieve the same result." *Delly v Bureau of State Lottery,* 183 Mich App 258, 260; 454 NW2d 141 (1990).

To avoid misinterpretation of the scope and meaning of this Court's previous opinion, however, we make the following brief observations.

First, the previous opinion in this case addressed only the issue of prefunding requirements for the Michigan Public School Employees Retirement System (MPSERS).[1] We were not presented with, and did not decide, the question of funding obligations of other systems such as the State Employees Retirement System,[2] the Judges Retirement System,[3] and the Legislative Retirement System,[4]— systems in which payment for health care benefits appears to be contingent upon annual appropriations of the Legislature.[5] The focus of the prefunding inquiry was the year 1985 and subsequent years when the Legislature deleted the appropriation requirement for MPSERS and required the board to pay the entire monthly premium and prefund "health benefits." *Musselman, supra* at 505; see 1985 PA 91.

Second, *Musselman* decided that only health care benefits for the years in question must be prefunded. We did not decide when health care benefits "arise" or "accrue" or what type of prefunding method is necessary to assure the actuarial integrity of the MPSERS. As we noted in *Shelby Twp Police & Fire Retirement Bd v Shelby Twp,* 438 Mich 247, 264; 475 NW2d 249 (1991), there are multiple correct methods of prefunding, and the method most appropriate in a specific situation is a matter of policy. Having found a constitutional obligation to prefund MPSERS health care benefits,

[1] MCL 38.1301 *et seq.*; MSA 15.893(111) *et seq.*

[2] MCL 38.1 *et seq.*; MSA 3.981(1) *et seq.*

[3] MCL 38.2101 *et seq.*; MSA 27.125(101) *et seq.*

[4] MCL 38.1001 *et seq.*; MSA 2.169(1) *et seq.*

[5] See MCL 38.38; MSA 3.981(38), MCL 38.2302; MSA 27.125(302), MCL 38.1020; MSA 2.169(20).

we did not intimate that a particular form of prefunding is required.

Finally, to maintain the status quo during the pendency of this appeal, we granted a temporary injunction and stated:

> Pending further order of this Court, defendants State Treasurer and Michigan Public School Employees Retirement Board are to isolate within the reserve for health benefits, MCL 38.1334; MSA 15.893(144), all assets of the fund derived from contributions for prefunding (which the parties have consistently identified as being in the amount of $139.5 million) and refrain from transferring such assets from the reserve. [*Musselman v Governor*, 449 Mich 1205 (1995).]

This injunction was necessary to prevent the impending transfer of $139.5 million from MPSERS to local school districts, monies that pursuant to statute had been set aside for the prefunding of health care benefits. Having affirmed our opinion, we would now extend the temporary injunction until further order of the Court, pending determination after further input from the parties regarding the effect of Proposal A.[6]

As a result of Proposal A, the full cost of retirement for public school employees has been shifted from the state to local school districts, with the local districts now responsible for all MPSERS retirement contributions, including health benefits. In an effort to help the local districts defray some of the cost of funding health benefits, the Legislature provided a one-time payment to local districts of $139.5 million from the MPSERS health benefits

---

[6] Proposal A, a combination of constitutional amendments addressing school finance and tax reform, was approved by the voters in a statewide special election on March 15, 1994. Proposal A amended Const 1963, art 9, §§ 3, 5, 8, 10, 11 and 36.

reserve account.[7] Absent the injunction entered by this Court on June 19, 1995, the $139.5 million in the MPSERS reserve account would have been transferred to local districts on June 20, 1995.

It follows from our conclusion that the constitution requires prefunding of pension benefits unconditionally promised, that this Court has the authority to enjoin dispersal of the $139.5 million in the MPSERS health reserve account to pay for unfunded health care obligations. Unlike plaintiff's request that we "require the Legislature to appropriate funds for retirement health care benefits," which we would reaffirm we cannot grant, we have the authority to prohibit the transfer of funds "held in reserve for pension payments to pay for unfunded accrued liabilities." *Musselman, supra* at 523. In *Kosa v State Treasurer,* 408 Mich 356, 383; 292 NW2d 452 (1980), this Court stated that "the courts can and will issue mandamus to enforce rights conferred by the 1963 Constitution." Following this reasoning in *Musselman,* we reinforced this Court's earlier statement:

> Although lacking power in the instant case to order the state to appropriate money, it is at least clear that a court can prevent the appropriate state officer with a clear legal duty to retain funds from violating that duty "apply[ing] funded reserves to meet unfunded retirement obligations."

[7] MCL 388.1747(4); MSA 15.1919(1047), in relevant part, states:

> However, for the 1994-95 fiscal year, any payments for health benefits made on behalf of a district or intermediate district that are supported by payments from the balance in the health benefits reserve, not to exceed an aggregate of $139,500,000.00, shall be credited toward the required payment of each district or intermediate district and shall reduce the amount otherwise due from that district or intermediate district.

[*Musselman, supra* at 523-524, citing *Kosa, supra*
at 382.]

Preventing disbursal of the fund, however, does
not necessarily mean that the fund or portions
thereof could not be transferred to the local dis-
tricts, which are now responsible for pension and
health benefits, to pay for health care obligations
that "arose" during the period those monies were
set aside. Although the issue has not been pre-
sented or addressed by the parties or the lower
courts, we are not aware of any limitation that
would prevent the distribution of the account to
the local districts, provided the restriction[8] on the
monies usage transfers as well (i.e., the funds may
be used only to fulfill health care obligations that
arose during the period in which the monies were
set aside). Hypothetically, such a course of action
would seem to be consistent with the Court's in-
tent to protect the obligation without mandating
the particular method of protection. *Shelby Twp,
supra.*

Were we in the majority on this issue, we would
invite briefing and argument regarding the lawful-
ness and practical consequences of such a transfer,
including, if necessary, referral to a master for
findings and recommendations. If it were decided
that the promise made to the employees could be
realized by transferring the fund with the restric-
tions intact, the injunction could be modified or
dissolved as appropriate and the transfer allowed
to take place.

## CONCLUSION

We would reaffirm the previous decision of the

---

[8] The restriction being that the monies "shall not be used for
financing unfunded accrued liabilities." Const 1963, art 9, § 24.

majority and continue the injunction, unless and until modified by further order of the Court.

CAVANAGH and MALLETT, JJ., concurred with BOYLE, J.