# STATE OF MICHIGAN

# COURT OF APPEALS

RICHARD MACEY, GERARD BECHARD, and
CHARLES MORRIS,

        Plaintiffs-Appellants,

v

ARCHDIOCESE OF DETROIT PRIESTS'
PENSION PLAN, INC, PATRICK CASEY,
CLAY CPREK, JOSEPH FROMM, ROBERT J
MCCLORY, LAWRENCE JACKSON, RONALD
JOZWIAK, ROBERT MONTICELLO, DANIEL
OLIVER, CATHERINE O'MALLEY, FRANCIS
REISS, CLIFFORD RUSKOWSKI, THOMAS J
STUART, and ALLEN H VIGNERON,

        Defendants-Appellees.

UNPUBLISHED
March 17, 2015

No. 318617
Wayne Circuit Court
LC No. 11-006623-CZ

Before: BOONSTRA, P.J., and SAWYER and O'CONNELL, JJ.

PER CURIAM.

In this action seeking an equitable accounting, plaintiffs appeal by right an order of the trial court granting defendants' motion for summary disposition and denying plaintiffs' motions for summary disposition. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 1984, the Archdiocese of Detroit ("AOD") decided to provide its priests with pension benefits upon their retirement. In 1994, defendant Archdiocese of Detroit Priests' Pension Plan, Inc. was incorporated. Its purpose is to "to receive contributions, and to invest and accumulate funds for the purpose of providing pensions to diocesan priests of the Archdiocese of Detroit." The priests' pension plan (the "Plan"), is currently governed by a document (the "Pension Document") last amended in 2012. Under the terms of the Pension Document, the administration and management of the Plan is vested in a pension board (the "Board")[1]. The

---

[1] The individual defendants are members of the Board.

-1-

Board's decisions are final, with the exception of the amount of benefits provided, which is subject to approval of the Archbishop. The Plan is funded by annual assessments paid by parishes (based on the number of priests employed) and returns on the Plan's investments.

Currently, retired priests receive a defined monthly pension benefit, as well as health insurance, automobile insurance, and an allowance for professional expenses. Plaintiffs, priests of various parishes within the AOD who have yet to retire, allege that in 2009 they began to fear that their future pension benefits were at risk, because the AOD announced that the Plan was "critically underfunded." Plaintiffs, through their attorneys, sent a letter to the AOD demanding detailed financial records regarding the Plan's assets. After the AOD refused to supply those records, plaintiffs filed this action. Alleging that the Plan was mismanaged and underfunded, plaintiffs sought equitable relief from the trial court in the form of an accounting. Through discovery, defendants provided plaintiffs with over six years of annual financial reports prepared by Plante Moran and Gabriel Roeder Smith & Company. These reports detailed the Plan's net assets and expected future liabilities to both retired and active priests. The reports also calculated the amounts required to fund future benefits.

Despite being provided with this information, plaintiffs, in a series of motions for summary disposition, argued that an accounting was necessary to discover the cause of what they believed was a history of underfunding the Plan. They requested that the trial court order that an accounting be completed by court-appointed forensic accountants and actuaries, at the expense of the AOD. Defendants responded to the motions and filed their own motion for summary disposition. The trial court granted defendants' motion for summary disposition and denied plaintiffs' motions, finding that the Plan was not underfunded and that plaintiffs had, in essence, been provided an accounting through discovery. Plaintiffs now appeal.

## II. EQUITABLE ACCOUNTING

Plaintiffs first argue that they are entitled to an equitable accounting, and accordingly, that the trial court erred by granting defendants' motion for summary disposition. We disagree. We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "We hear and consider equity cases de novo on the record on appeal." *Tkachik v Mandeville*, 487 Mich 38, 44-45; 790 NW2d 260 (2010). "The granting of equitable relief is ordinarily a matter of grace, and whether a court of equity will exercise its jurisdiction, and the propriety of affording equitable relief, rests in the sound discretion of the court, to be exercised according to the circumstances and exigencies of each particular case." *Id*. at 45 (brackets, quotation marks, and citation omitted).

An accounting is an equitable remedy under the common law. *Basinger v Provident Life & Accident Ins Co*, 67 Mich App 1, 6; 239 NW2d 735 (1976). The purpose of ordering an accounting is to determine the amount due to a party. *Id*. In cases filed at law, such a determination generally is left to the jury. *Id*. But the equitable remedy of an accounting developed in courts of equity because it was "evident that many cases arise in which the determination of what is justly due to a plaintiff necessarily involves long and difficult inquiries—for instance, it may be necessary to review a series of transactions extending over many years. For such an investigation a jury is clearly incompetent." *Id*. at 6-7 (quotation marks and citation omitted). "Thus, in situations where an aggrieved party was unsure of the amount he

was entitled to recover, he often sought the concurrent jurisdiction of a chancery court by bringing a bill of accounting alleging equitable cognizance on the basis, among other things, that the accounts involved were greatly complicated." *Id*. at 7.

While plaintiffs describe this action as one seeking an equitable accounting, in actuality it is not. There is no dispute regarding what amount is owed to plaintiffs, which at this point they acknowledge is nothing. Plaintiffs have not retired, and accordingly, have no right to receipt of pension or other retirement benefits of any sort at this time. Further, assuming that plaintiffs do retire, the amounts to which they will become entitled will, at the appropriate time(s), be determined by the Board and approved by the Archbishop in accordance with the Pension Document and thus presumably will not require difficult or complex calculation.

It thus appears that plaintiffs do not seek to discover an amount to which they believe they are currently entitled. Rather, they seem to believe that an accounting will help discover why the Plan is allegedly underfunded. An action for an accounting is not designed for such a purpose, and in fact does no such thing; it is simply a remedy aimed in appropriate circumstances at discovering the amount owed to a claimant or claimants. *Basinger*, 67 Mich App at 6-7. Further, "discovery is not itself a ground for equitable interference." *Austin v Socony Vacuum Oil Co*, 291 Mich 513, 520; 289 NW 235 (1939).

Moreover, as the trial court recognized, if there was any question regarding the financial state of the Plan or how its assets are invested, these questions have been answered through discovery. "An accounting is unnecessary where discovery is sufficient to determine the amounts at issue." *Boyd v Nelson Credit Centers, Inc*, 132 Mich App 774, 779; 348 NW2d 25 (1984). Defendants have provided plaintiffs with detailed financial reports for the years 2007 through 2013, prepared by two independent professional accounting firms, which provide information regarding the assets, liabilities, and investments of the Fund. An accounting is unnecessary where there are "no items of which the complainant is not fully informed . . . ." *Laubengayer v Rohde*, 167 Mich 605, 611; 133 NW 535 (1911).

But despite being provided with these reports, plaintiffs maintain that they need a "forensic accounting," completed under judicial supervision, to protect their future retirement benefits. Thus, it appears that what plaintiffs seek is not an equitable accounting, but rather a judicially-imposed investigation into the reasons behind whatever management decisions have been made with regard to the Plan's assets. Moreover, plaintiffs' desires go even farther, as they state in their appellate brief that they believe an accounting is only "an ideal first step to understanding *and solving* such chronic underfunding." (Emphasis added). Further, when discussing a different issue raised in their appellate brief, plaintiffs request the appointment of a "[f]orensic [a]ccountant and [i]ndependent [a]ctuary . . . to test the Pension Plan for defects *and to remedy* its indisputably underfunded nature . . . ." (Emphasis added). These statements indicate that plaintiffs actually seek not an accounting, but judicial investigation and oversight of the financial management of the Plan through court-appointed accountants and actuaries. Plaintiffs provide no authority, and we are unaware of any, that would allow for such an

extraordinary remedy.[2]  Further, it is clear from the Pension Document that the authority to manage the Plan's finances is vested in the Board.  According to the Pension Document, the Board's decisions in such matters are "final, binding and conclusive upon each Participant, Retired Participant, former Participant and every other person or party interested and concerned."  Plaintiffs simply have no right, whether at law or in equity, to control the financial management of the Plan.

Further, even if plaintiffs were only seeking an accounting, they cannot establish a right to that remedy.  " 'To sustain a bill for an accounting there must be mutual demands, a series of transactions on one side, and payments on the other.  Where all the items are on one side, there can be no accounting.' "  *Boyd*, 132 Mich App at 779, quoting *Laubengayer*, 167 Mich at 611.  There are no mutual demands or transactions between the parties here, at least as it relates to the Plan's assets, that would require an accounting to untangle.  Rather, plaintiffs' action sought an equitable accounting to discover information regarding the Plan's management and assets.  Again, "discovery is not itself a ground for equitable interference." *Austin*, 291 Mich at 520.

The authorities cited by plaintiffs do not compel a different result.  Plaintiffs first assert that the Plan is severely underfunded, causing them to fear future nonpayment.  Relying on cases holding that an accounting is proper to untangle complicated financial transactions, plaintiffs argue that their fears warrant an accounting.  In *Blodgett v Foster*, 114 Mich 688; 72 NW 1000 (1897), the first case cited by plaintiffs, an accounting was found appropriate because the parties' underlying contract dispute was based on a series of complicated transactions between the parties spanning many years.  *Id*. at 692-696.  The second case cited by plaintiffs is *Second Mich Co-Op Housing Ass'n v First Mich Co-Op Housing Ass'n*, 358 Mich 252; 99 NW2d 665 (1959).  In that case, a dispute arose over a large sum of money allegedly commingled between the two corporations that were parties to the action.  *Id*. at 253-255.  An accounting was deemed proper there to untangle the "complicated dealings between these 2 corporations . . . ." *Id*. at 256.  The types of complicated dealings that warranted an accounting in plaintiffs' cited authorities are those that occur between two parties to an action, and which result in an actual dispute over who is entitled to funds.  See *Second Housing Co-Op Housing Ass'n*, 358 Mich at 252-256; *Blodgett*, 114 Mich at 692-696.  There are no such complicated transactions between the parties here, nor is there any present dispute regarding money owed to one party by the other.  Accordingly, these

---

[2] Relying on a statement made by Justice Boyle in *Musselman v Governor (On Rehearing)*, 450 Mich 574, 585; 545 NW2d 346 (1996) (Opinion of BOYLE, J.), plaintiffs argue that this Court has the authority to supervise the Plan "to secure gradual payment of such unfunded liabilities."  Plaintiffs ignore at least two key facts about Justice Boyle's statement: (1) it did not garner the support of a majority of the Court, and accordingly, lacks precedential value, *Spectrum Health Hosp v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 535; 821 NW2d 117 (2012); and (2) even apart from its non-binding nature, Justice Boyle's statement was specifically limited to "the issue of prefunding requirements for the Michigan Public School Employees Retirement System[,]" which the Court had previously "found a constitutional obligation to prefund . . . [,]" *Musselman*, 450 Mich at 563 (Opinion of BOYLE, J.).

cases do not support a determination that the trial court erred in granting summary disposition to defendants in the instant case.

Plaintiffs next argue that their allegations of mismanagement of the Plan's assets warrant an accounting. Even assuming that the Plan has been mismanaged, the cases cited by plaintiffs offer no support for ordering an accounting. The first case they cite, *Lewis v Poel*, 376 Mich 167, 169-170; 136 NW2d 7 (1965), held only that a claim, one element of which sought an accounting, was not barred by the doctrine of laches. The Court expressly declined to decide whether a properly supported "motion for summary judgment should be granted as against this bill." *Id*. at 169. While the remaining cases cited by plaintiffs involved what could be generally characterized as mismanagement, all are distinguishable in that they involved a present dispute over entitlement to the property that was allegedly mismanaged. See *L'Hommedieu v Smith*, 351 Mich 223; 88 NW2d 510 (1958) (a complaint which alleged that the defendant, a city treasurer, had impermissibly withheld funds from paychecks issued to a number of police and fire department members alleged facts sufficient to warrant an accounting); *Cass Co v Shattuck*, 288 Mich 555; 285 NW 454 (1939) (an accounting was proper where the defendant, a sheriff, failed to pay various fees and monies to the county treasurer which were collected by the sheriff on the county's behalf); *Grigg v Hanna*, 283 Mich 443; 278 NW 125 (1938) (ordering an accounting in a dispute over trust funds fraudulently appropriated by a party); *Murray v Keeley Institute of West Mich*, 190 Mich 295; 157 NW 87 (1916) (affirming a trial court's judgment after an accounting to discover the value of claims arising out of the plaintiff's ownership interest in various companies); *Bondy v Davis*, 40 Mich App 153; 198 NW2d 418 (1972) (an accounting was the proper remedy to settle the partnership interests of the parties where the plaintiff alleged the defendant had appropriated partnership funds for his own use). Again, plaintiffs have no present right to any of the Plan's assets, and accordingly, have presented no proper basis for a court to order an accounting.

Plaintiffs additionally argue that an accounting is appropriate because the Plan would be deemed "critically underfunded" under the Employee Retirement Income Security Act ("ERISA"), 29 USC 1001 *et seq*., which would then trigger imposition of federal supervision and a rehabilitation plan. However, plaintiffs also repeatedly acknowledge that ERISA has no application here because the Plan is exempt from ERISA's mandates. In that regard, plaintiffs are correct; ERISA excludes from its coverage plans established and maintained by tax-exempt churches or associations of churches, unless the church or association makes an election to be so covered under 26 USC 410(d). 29 USC 1003(b)(2); 29 USC 1002(33); see also *Scheuneman v Gen Motors Corp*, 243 Mich App 210, 214; 622 NW2d 525 (2000). Here, neither the AOD nor the Board made any such election. Because ERISA admittedly does not apply, plaintiffs' ERISA-based argument in no way demonstrates that an accounting is required in this instance.

### III. MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiffs next argue that the trial court erred when it refused to issue an order compelling defendants to comply with several of plaintiffs' requests for production of documents. We disagree. We review for an abuse of discretion a trial court's order on a motion to compel discovery. *Cabrera v Ekema*, 265 Mich App 402, 406; 695 NW2d 78 (2005).

The trial court principally denied plaintiffs' motion to compel production of documents because discovery was closed at the time plaintiffs requested these documents. On appeal, plaintiffs do not dispute the basis for the trial court's ruling. This Court therefore need not even consider granting the relief plaintiffs seek. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Further, a trial court does not abuse its discretion by refusing to compel discovery after discovery has closed. See *Chastain v Gen Motors Corp*, 254 Mich App 576, 593-594; 657 NW2d 804 (2002). Plaintiffs' argument is without merit.

Further, even apart from the fact that discovery was closed, we find no error in the trial court's denial of plaintiffs' discovery motion. Plaintiffs assert that the trial court erred in denying the requests, which were for a variety of documents reflecting the financial state and management decisions of the Plan, because those documents would be relevant to the instant action. It is true that, as a general matter, "[p]arties are permitted to obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the lawsuit, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party." *Cabrera*, 265 Mich App at 407. "However, a trial court should also protect the interests of the party opposing discovery so as not to subject that party to excessive, abusive, or irrelevant discovery requests." *Id*. As discussed above, plaintiffs were in fact provided with financial reports, reports that detailed the assets of the Plan and how those assets were invested; further, plaintiffs are not entitled to the relief they seek. Accordingly, plaintiffs' discovery requests were irrelevant or cumulative, and it was not an abuse of discretion for the trial court to deny those requests. *Cabrera*, 265 Mich App at 407.

Affirmed.[3]

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Peter D. O'Connell

---

[3] Plaintiffs also argue that their requested remedy does not run afoul of the First Amendment's Establishment Clause. However, having determined that plaintiffs are not entitled to the remedy they seek, it is unnecessary to determine whether ordering such a remedy would violate the First Amendment. "[T]here exists a general presumption by this Court that we will not reach constitutional issues that are not necessary to resolve a case." *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 235; 507 NW2d 422 (1993). Accordingly, we decline to address this issue. In light of our resolution of this case, we also need not address plaintiffs' anticipatory arguments that their claims are not barred by lack of standing or the running of the statute of limitations, which in any event were not decided by the trial court in the first instance. *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 387; 803 NW2d 698 (2010).