CAVANAGH, J.
(dissenting). I believe that retirement health care benefits earned by public school employees constitute “accrued financial benefits” that are protected by our Michigan Constitution from diminishment or impairment. I also believe that the statute that provides retirement health care benefits for public school employees, MCL 38.1391, creates a contract with public school employees and retirees that cannot be substantially impaired. Because there are significant questions about the accuracy of the record used by the lower courts to determine if a substantial impairment indeed occurred, I would remand for further review. Accordingly, I respectfully dissent from the majority’s position that public school employees and retirees are without protection from the prospect that their retirement health care benefits may be drastically decreased or even eliminated.
I. HEALTH CARE BENEFITS ARE “ACCRUED FINANCIAL BENEFITS” WITHIN THE MEANING OF MICHIGAN’S CONSTITUTION
Const 1963, art 9, § 24 provides the following:
The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions *673 shall be a contractual obligation thereof which shall not be diminished or impaired thereby.
Financial benefits arising on account of service rendered in each fiscal year shall be funded during that year and such funding shall not be used for financing unfunded accrued liabilities.
Whether health care benefits are “accrued financial benefits” has already been addressed by this Court in Musselman v Governor, 448 Mich 503, 510; 533 NW2d 237 (1995) (Musselman I), and Musselman v Governor (On Rehearing), 450 Mich 574; 545 NW2d 346 (1996) (Musselman II). In Musselman I, this Court examined whether health care benefits are indeed “financial” benefits. We held that because the purpose of the constitutional provision is to prevent the state from amassing bills for pension payments, including health care benefits, for which the state does not have the money to pay, the term “financial benefits” includes retirement health care benefits.
Reflecting on the analysis in Musselman I, I fail to see its flaws. This Court reasonably concluded that the goal of the constitutional provision is to ensure that the state can pay for the commitments it has made. Regardless of whether the commitment is for a straightforward monthly cash allowance to a retiree or for payment of health care benefits for a retiree, the state must still pay for its obligations. If the state has failed to set aside an appropriate amount of money, the situation is still the same, meaning the state still has a financial consequence.
I believe this interpretation is the one that the people gave the constitutional provision when it was adopted because it best reflects the common understanding of the people. See Soap & Detergent Ass’n v Natural Resources Comm, 415 Mich 728, 745; 330 NW2d 346 *674 (1982). The most reasonable interpretation of the phrase “accrued financial benefits” includes health care benefits. Health care benefits are given in lieu of additional compensation to public school employees. A health care benefit is a financial benefit because it clearly costs the state money and has an economic value to the employee. Notably, our Constitution was not written to include every conceivable aspect of a pension plan. It was certainly not beyond the understanding of the ratifiers that health care benefits, which cost the state money, would be offered as a retirement benefit. As such, these benefits would need to be protected, just as monthly cash allowances to retirees must be protected.
As we stated in Musselman I, supra at 516 n 12, “Many delegates to the 1961 Constitutional Convention perceived as unfair the rule that pensions granted by public authorities were not contractual obligations, but rather gratuitous allowances that could be revoked at will.” See, e.g., 1 Official Record, Constitutional Convention 1961, pp 770-774. It should not come as a surprise that the ratifiers would believe this to be true about health care benefits that mean as much, if not more, to many retirees.
Moreover, even if the ratifiers did not imagine every conceivable pension plan benefit that would be offered, the “idea behind formulating a general rule, as opposed to a set of specific commands, is that a rule governs possibilities that could not have been anticipated at the time.” Musselman I, supra at 514.[1] The constitutional *675 provision was meant to address all public employee retirement systems; it is entirely reasonable that the ratifiers would not be aware of every possible retirement benefit being offered to every public employee. See, e.g., 1 Official Record, Constitutional Convention 1961, p 771. In response to a question whether the state could increase benefits and whether an increase in benefits would be a gratuity or an obligation that the state must fulfill, a constitutional convention delegate responded as follows: “Certainly there’s nothing here to prohibit the employer from increasing the benefit structure.” Id. at 774. “Once the employee, by working pursuant to an understanding that this is the benefit structure presently provided, has worked in reliance thereon, he has the contractual right to those benefits which may not be diminished or impaired.” Id.
The constitutional principle declared is that accrued financial benefits, including health care benefits, will be protected for retirees. Simply, “once an employee has performed the service in reliance upon the then prescribed level of benefits, the employee has the contractual right to receive those benefits under the terms of the statute or ordinance prescribing the plan.” Id. at 771.
In attempting to define the term “accrued financial benefits,” the majority cites numerous definitions for the word “accrue,” and I do not quarrel with those definitions.[2] Indeed, as the majority states, “accrue” *676 means “to increase, grow” and “to come into existence as an enforceable claim; vest as a right.” Ante at 653 (citation and internal quotation marks omitted). However, I disagree with the majority’s assertion that the ratifiers of our Constitution would have commonly understood “accrued” to mean that an individual’s benefits must increase or grow over time. The majority seems to believe that to be an accrued financial benefit, an employee’s retirement health care benefits must gradually increase on the basis of the number of years that the person is employed, yet this is not accurate. The term “accrued financial benefits” was used to denote benefits that were contractual obligations on the part of the state. The term “accrued financial benefits” was meant to include benefits that an employee had worked in reliance on and continued to work in reliance on. This is in contrast to the term “financial benefits,” which was used in the second clause of the constitutional provision to denote a system in which the benefits earned for the year were funded annually. Because the second clause only specifically dealt with how to fund benefits earned in a given year, retirement systems would eventually need to address the funding for benefits that had been earned in prior years but had not been properly funded. 1 Official Record, Constitutional Convention 1961, pp 773-774.[3]
*677 When a public school employee has fulfilled his commitment and is then entitled to receive health care benefits once he retires, the employee has an enforceable claim to receive the benefits upon retirement. “Accrued” does not mean that the amount of benefits the employee will receive during retirement must grow in conjunction with the employee’s years of service. For an employee to have an accrued financial benefit, he must fulfill the obligations set forth by the state. For plaintiffs, all the events that are necessary for them to receive their benefits have come into existence. Simply, plaintiffs went to work and did their jobs for the required number of years. As our Constitution states, accrued financial benefits “shall be a contractual obligation thereof which shall not be diminished or impaired thereby.” Const 1963, art 9, § 24. Once an employee has fulfilled his obligation, the state must fulfill its obligation and be prepared to pay retirement health care benefits when necessary.
Additionally, even if the term “accrued financial benefits” were viewed as a term more commonly used by accountants and actuaries than by laypersons, its meaning would still encompass retirement health care benefits. As stated by the Governmental Accounting Standards Board (GASB), cash payments and other retirement benefits, such as health care benefits, “are *678 conceptually similar transactions-both involve deferred compensation offered in exchange for current services —and should be accounted for in a similar way.” Governmental Accounting Standards Board, Accounting and Financial Reporting by Employers for Postemployment Benefits Other Than Pensions, Statement No. 45, June 2004, p 73 (emphasis added).[4] As noted by the majority, “ ‘[t]he words “accrued financial benefits” were used designedly, so that the contractual right of the employee would be limited to the deferred compensation embodied in any pension plan ....’” Ante at 657, quoting Musselman I, supra at 510 n 8, quoting 1 Official Record, Constitutional Convention 1961, pp 773-774 (emphasis added). By any standard employed, the meaning of the term “accrued financial benefits” encompasses retirement health care benefits for public school employees.
II. HEALTH CARE BENEFITS ARE CONTRACTUAL OBLIGATIONS
The United States Constitution provides in relevant part, “No State shall. . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . .” US Const, art I, § 10, cl 1. Michigan’s Constitution provides, “No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted.” Const 1963, art 1, § 10.
Information about retirement health care benefits for Michigan’s public school employees is set forth in MCL 38.1391. MCL 38.1391(1) states that the state is responsible for paying the monthly premiums for plain *679 tiffs’ health care benefits.[5] In Musselman I, supra at 516, this Court stated that the obligation to pay retirement health care benefits “is a contractual right arising from the fact that employees have worked in reliance on the statutory promise that the board will pay earned health care benefits of any member receiving a retirement allowance.” In Musselman I, supra at 519 n 19, the defendants even conceded “that retirement health care benefits are contractual benefits subject to Const 1963, art 1, § 10.” Further, “the defendants conceded that these statutes create a right to receive health benefits that may not be impaired.” Musselman I, supra at 505 n 1.
The statute’s intent is clear — in exchange for receiving years of an employee’s services, the state will pay for retirement health care benefits. This unconditional guarantee is what many public school employees and retirees have relied on throughout the years, and the state has benefited from that reliance. As stated at the constitutional convention, “[T]here is no question that when an employee today takes employment with a governmental unit, he does so with the idea that there is a pension plan or retirement system involved.” 1 Official Record, Constitutional Convention 1961, p 773. The majority’s position now allows the state to choose, at its whim, not to fulfill its obligation under the contract even though employees have already performed the responsibilities necessary to fulfill their obligations under the contract.
The state did not offer retirement health care benefits to public school employees to be charitable; it did *680 so to remain competitive in the marketplace. See 1 Official Record, Constitutional Convention 1961, p 773. And public school employees do not “receive” these benefits for free. Because retirement health care benefits cost money, the monetary compensation for public school employees had to have been factored into the equation. It is unreasonable to now claim that public school employees, who received less compensation because of the benefits they believed they would receive when they retired, are now no longer entitled to the health care benefits they worked to receive. Stability in retirement benefits is likely at least part of the reasons why many people chose to accept a position with the public schools or stay in that position, and it is untenable to tell these employees and retirees that it was for naught.
The majority attempts to buttress its argument by noting the definition for “compensation” provided by MCL 38.1303a(l). However, the definition of “compensation” in MCL 38.1303a does not indicate that retirement health care benefits are not to be considered “accrued financial benefits” or are not contractual obligations that the state must fulfill. The items listed in MCL 38.1303a are used to determine a retiree’s monthly cash allowance. See, e.g., MCL 38.1309; MCL 38.1379; MCL 38.1384. However, this does not mean that the state is absolved of its responsibility to fulfill its obligations. The majority even states the fundamental concept that is critical to the analysis of this issue: “Specifically, a public school employee can become contractually entitled to ‘compensation’ by first performing services.” Ante at 667. Because retirement health care benefits for public school employees are deferred compensation, see ante at 657,1 fail to comprehend how the majority can justify its misapplication of a basic contract principle. I am quite certain that it comes as a *681 surprise to the over 140,000 public school employees that their retirement health care benefits are nothing more than a “policy decision” that the Legislature can choose to alter or eliminate at its whim. To many retirees, the health care benefits they receive through their pension plan are every bit as important, if not more so, than the monthly cash allowance they receive through their pension plan. Public school employees surely did not envision that they were afforded no protection against their retirement health care benefits being capriciously eliminated. The provision of health care benefits for retirees is not a gratuitous undertaking by defendants.[6] It is a benefit that is provided to plaintiffs in exchange for years of service. Defendants are not altruistically giving plaintiffs these benefits, plaintiffs earned them through years of hard work and dedication. Plaintiffs fulfilled their obligations, and the state should fulfill its obligation.
Finally, contrary to the majority’s panic-stricken response to the dissent, the Constitution and our system of government are not under attack merely because I disagree with the majority over the interpretation of the words of the Constitution and the applicable statute. Regardless of the majority’s attempt to distract the reader from the issues at hand, reading the plain words of the statute to indicate that a contract was made with public school employees and retirees does not mean that no legislative action can ever be amended or repealed. It does not mean that welfare benefits could never be *682 altered, as the majority’s rhetoric proclaims. It merely means that when reading this statute, it is clear that the words chosen by the Legislature were meant to oblige the state to provide the retirement health care benefits that were promised to public school employees.
While the majority accurately states that benefit battles are fought in the Legislature, it inaccurately states that benefits “won” can then be changed at the whim of a subsequent legislature. Once benefits have been guaranteed to workers and the workers have served the state in reliance on them, it is unconstitutional to substantially impair the receipt of these earned benefits.
The dissent states a concept that is really quite unremarkable. The government, just like any other party to a contract, must fulfill its obligation. When a public school employee has worked for years in reliance on a promise of retirement health care benefits, our system of government is not challenged by the simple notion that the state must provide these benefits.
III. ADDITIONAL DISCOVERY IS NECESSARY TO PROPERLY ASSESS WHETHER DEFENDANTS’ ACTIONS CREATE A SUBSTANTIAL IMPAIRMENT OF PLAINTIFFS’ CONTRACTUAL RIGHTS
Because plaintiffs’ retirement health care benefits are a contractual right, the next step is to determine whether the increases in plaintiffs’ copayments and deductibles substantially impaired plaintiffs’ contractual rights. Romein v Gen Motors Corp, 436 Mich 515, 534; 462 NW2d 555 (1990). If plaintiffs’ contractual rights are impaired, the impairment must be the result of a legitimate public purpose. Id. at 535. Finally, the means chosen to carry out the public purpose must be reasonable.
I must first address defendants’ argument that the *683 legitimate public purpose of the increases is to ensure that there are sufficient school funds available for children. I believe that ensuring high quality education for our children is a valuable and worthwhile public purpose that should be one of our state’s highest priorities. However, defendants’ argument essentially pits the quality of education for school children against providing adequate health care benefits for retirees. Yet meeting the needs of school children and meeting the needs of retirees are not mutually exclusive. While it may be challenging, to say the least, to determine the best way to meet the needs of children and retirees, it does not mean that the commitment made to our state’s retirees can be ignored. Merely because meeting our responsibilities is difficult does not mean that our responsibilities can be abandoned.
Plaintiffs’ legitimate expectations are that retirement health care benefits will be continued and plaintiffs’ portion of the costs for these benefits will not be significantly altered. It is not sufficient for defendants to pay the “entire monthly premium” if defendants disproportionately increase the amount that plaintiffs must pay for their deductibles and copayments. Moreover, increasing the amount that plaintiffs must pay over time can certainly amount to a substantial impairment if defendants do in increments what they would not be allowed to do in one large adjustment.
The amount of copayments and deductibles is linked to the amount of the monthly premiums. By increasing copayments and deductibles to extremely high proportions, the defendants could essentially avoid paying any monthly premium. That would not fulfill the terms of the contract. While the statute does not specifically state the amount that the state must pay, like any contract, the words used by the Legislature must be *684 construed to ascertain the intent of the parties. See Sobczak v Kotwicki, 347 Mich 242, 249; 79 NW2d 471 (1956).
Whether there has been a substantial impairment is largely a factual question that is better resolved after additional discovery, especially because there have been claimed inaccuracies in some of the documents submitted by defendants. It is reasonable that the amount that plaintiffs must pay will increase in logical proportion to the amount they have historically paid. However, because plaintiffs raise valid concerns about the accuracy of reports submitted by defendants, I believe it is imprudent to determine on the basis of what may amount to be an inadequate record whether the increases pose a substantial impairment.
IV CONCLUSION
The years of dedication that public school employees and retirees have committed to educating and caring for the children of our state are worth more than empty promises provided to them by the majority’s approach. I believe that retirement health care benefits earned by public school employees constitute “accrued financial benefits” that are protected by our Michigan Constitution from diminishment or impairment. I further believe that retirement health care benefits earned .by public school employees are a contractual right created by statute, and whether this contractual right was substantially impaired cannot be determined without further review by the lower courts. Accordingly, I respectfully dissent.
KELLY, J., concurred with CAVANAGH, J.

 We believe that this constitution must he a forward looking document; that it must take cognizance of the problem; that it must spell out for the future the manner in which these funds should be managed, so that our children will not, 50 years hence, *675 suffer from the fact that we failed to put in enough money to take care of the benefits attendant upon the service currently performed by public employees. [1 Official Record, Constitutional Convention 1961, p 771.]

 While I do not quarrel with the definitions used, I must note that the majority yet again insists on relying solely on dictionary definitions to the illogical exclusion of context. “There is no more irritating fellow than the *676 man who tries to settle an argument about communism, or justice, or liberty, by quoting from Webster.” Pflug, ed, The Ways of Language (New York: The Odyssey Press, Inc, 1967), ch 4, How to Read a Dictionary, p 62. While dictionary definitions are certainly useful, they must be examined in context. See also Hayakawa, Language in Thought and Action (New York: Harcourt, Brace and Co, 1949), ch 4, p 62 (“Interpretation must be based, therefore, on the totality of contexts.”).

 The constitutional provision does two things:
[I]n the first paragraph, it provides that the relationship between the employing unit and the employee shall be a contrac *677 tual relationship so that the municipality may not change the relationship at its will. The benefits that have accrued up to a given time are contractual and must be carried out by the municipality or by the state. The second paragraph provides that each year the system shall pay in enough money to fund the liability arising in that year. It does not require that the system catch up with all of its past liability, which would be an impossibility in connection with some of the state systems, but it does require that they shall not go any further behind. [2 Official Record, Constitutional Convention 1961, p 2659.]

 The GASB also states that retirement health care benefits, like monthly cash allowances, arise “from an exchange of salaries and benefits for employee services rendered and constitute!] part of the compensation for those services.” Id. at 1. Retirement benefits “are an exchange of promised benefits for employee services.” Id. at 77.

 MCL 38.1391(1) provides, “The retirement system shall pay the entire monthly premium or membership or subscription fee for hospital, medical-surgical, and sick care benefits for the benefit of a retirant or retirement allowance beneficiary who elects coverage in the plan authorized by the retirement board and the department.”

 In Ramey v Pub Service Comm, 296 Mich 449, 462; 296 NW 323 (1941), this Court held that vacation with pay is not a gratuity — it is compensation for services rendered. If paid vacation time is not considered a gratuity, then I cannot fathom how retirement health care benefits can be considered a gratuity when they are part of the consideration that was exchanged for the years of service provided by public school employees.